IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

VERNEISA JACKSON,                  *

                                *

      Plaintiff,                *

                                *

v.                           *  CIVIL ACTION NO: 3:11-CV-111-

                                *  DHB-WLB

CORRECTIONS CORPORATION OF  *

AMERICA,                  *

                                *

      Defendant.              *

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES, Plaintiff and pursuant to Fed. R. Civ. P. 56 and Local Rule 56 files her Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and shows:

### INTRODUCTION

Defendant is not entitled to summary judgment because there are material facts in dispute that preclude summary judgment in this case. Defendant failed to pay the Plaintiff overtime worked from home, discriminated against Plaintiff on the basis of race, subjected her to a hostile work environment, and retaliated against her after she complained of Defendant's unlawful conduct; which led to her constructive discharge. More than ample evidence exists in the record for the court to determine that the Defendant's Motion for Summary Judgment is unfounded and based primarily on the disputed facts. There are no genuine issues of material fact regarding the fact that Plaintiff engaged in protected activity, there is no question

1

that Defendant was aware of the activity, there is no question that any reasonable juror would find that Plaintiff suffered an adverse employment action, and that the adverse action was taken for purposes of retaliating against Plaintiff. Accordingly, all of Plaintiff's claims should survive Summary Judgment.

## STATEMENT OF MATERIAL FACTS[1]

**A.   Failure to Promote Claims**

**1) Facts Related to Plaintiff's Failure To Hire As Librarian Claims.**

Plaintiff was employed by Defendant as librarian[2] from August 21, 2003 to April 12, 2005[3]. [Defendant's Tab B: Jackson Depo., pp. 142; 145-146] According to Defendant, a library science degree was a prerequisite for the position. Plaintiff was hired for the position, but did not have a library science degree. At the time of her hiring, Plaintiff notified Defendant that she did not have a library science degree. [Tab C: Jackson Dec., ¶ 4 – 5, Tab C: Exh.C-1, C-2]. In response, Plaintiff was told that Defendant could obtain a waiver of the degree. [Tab C: Jackson Dec., ¶ 5]. The Warden acknowledged that Plaintiff received a waiver of the library science degree requirement while employed as librarian. [Tab D: ¶ 7]. Defendant disputes that it was aware that Plaintiff lacked a library science degree when she was hired. [Defendant's Tab A: Hartley Aff. ¶ 7] which contradicts Defendant's ACA standard memorandum which shows Defendant's awareness that Plaintiff did not possess a library science degree. [Tab C: Exh. C-1, Exh. C-2] However, Defendant acknowledges that they became aware[4] that Plaintiff lacked a library

---

[1] Plaintiff also relies upon her response to Defendant's Statement of Undisputed Material Facts and her Statement of Material Facts filed contemporaneously with this Response.
[2] The qualifications for Librarian have not changed since I was hired as Librarian in 2003. [Tab C: Exh. 10]
[3] During the Investigation in March 2010, Shannon Pooler stated "during the initial accreditation process, the facility had the services of a contract librarian and no deficiencies applicable to the librarian position or library service were noted." Please note that I was the full-time Librarian during this timeframe.
[4] Contrary to CCA's Position Statement to the EEOC, which states, "However, on May 1, 2005, it was "discovered" that Ms. Jackson actually did not meet the minimum qualifications for the position because she did not have a library science degree."[Tab C: Exh. C-1, C-2, Exh. 6]. Please also note that Plaintiff had already applied and

2

science degree on November 22, 2004. [Defendant's Tab B: Jackson Depo, p. 143, Defendant's Ex. 12]. After Defendant became aware that she lacked a library science degree, Defendant waived the requirement by allowing her to continue to work as librarian.

On April 12, 2005, Plaintiff left the library and accepted a position as Case Manager. [Tab C: Jackson Dec., ¶ 9]. She worked as Case Manager until March 2008. In April, 2008, Plaintiff returned to the library as librarian aide. [Defendant's Tab B: Jackson Depo., p. 160, Tab C: Jackson Dec., ¶ 27]. In January of 2009, Defendant issued a memorandum stating that the librarian position was vacant. [Tab C: Jackson Dec., ¶ 33, Defendant's Exh. 31]. On February 19, 2009, Plaintiff submitted her resume for the Librarian position. [Defendant's Tab B: 173, Defendant's Ex. 31; Tab C: Jackson Dec., ¶ 33]. At the time of her application, she was told that the degree requirement was waivable. [Tab C: Jackson Dec., ¶ 34]. Over the next six months she was repeatedly told by the Assistant Warden, Human Resources Manager and her supervisor that the degree requirement was waivable and they were processing her application. [Tab C: Jackson Dec., ¶ 34, Tab D: ¶12]. In the interim, she was told that she was required to perform both job requirements. [Tab C: Jackson Dec., ¶ 35] In November of 2009, Plaintiff was told by the Assistant Warden that she would not be hired as librarian. [Defendant's Tab B: Jackson Depo, pp. 51-52; Tab C: Jackson Dec., ¶ 45].

## 2) Records Manager (2010)

In January 2010, Plaintiff was interview for Records Manager. Plaintiff was not selected for this position. After reading that Defendant had an Affirmative

---

accepted the Case Manager position when CCA claims to have discovered that she did not meet the minimum requirement. CCA's Position Statement also states in footnote 9, on page 2 of 5, (1.C.1b), "Subsequently, the pay rate for the Case Manager position was reduced from $34,163.25 to the actual rate for the position pursuant to the applicable area wage determination rate of $33,425.60." Please note that this is also not true, Case Manager pay was never reduced. [Tab C: C-3]

Action Plan and policy 1-5 that states that Defendant must comply with Executive Order 11246, Plaintiff noted that since 2003, there has not been an African American in a supervisory position in the Defendant's Records or Quality Assurance department. [Tab C: Jackson Dec. ¶16, Exh. 3[5]] Plaintiff claims that Defendant may be in violation of their Affirmative Action Plan. [Plaintiff's Statement of Material Facts in Opposition ¶¶1-4]. Plaintiff also believes that Defendant's interviews are very subjective and that Assistant Warden, Marc Gunn, white male, purposely gave her low scores so that Stacey Bentson would get the position. [Tab C: Jackson Dec. ¶53, Exh. 7].

### 3) Unit Manager (2009)

Plaintiff applied for Unit Manager again in January 2008; two (2) candidates were to be selected from that applicant pool [Exh. 19]. Tamara Jordon, African American female, was selected for one of the position. The other position was held for months until Defendant selected Tim Wheaton, white male, in October 2008, to act and train as Unit Manager for months before placing him into the position without posting it in July 2009. [Tab C: Jackson Dec. ¶25, Tab D: ¶10, Tab E: ¶17, Exh. 19[6]].

### 4) Disciplinary Hearing Officer (2009)

Plaintiff also spoke with Katie Cameron, white female, about her acting as Alternate DHO, at the time; Plaintiff did not know that she had received paid training from Defendant or that this training was a prerequisite for qualifying for the DHO position. Plaintiff was not given equal opportunity to receive this training

---

[5] An organizational profile is a depiction of the staffing pattern within an establishment. The profile displays data that will assist the company in identifying where in the company's workforce women or minorities are underrepresented or concentrated. The contractor must use either an "organizational display" or "workforce analysis" as its organizational profile, 41 CFR 60-2.11.

[6] Plaintiff contends that Defendant did not post this position by rather allowed Wheaton to put in an application and interview only Wheaton without posting the position. There is a credibility issue regarding whether or not Defendant actually posted this position.

4

for the DHO position. [Tab C: Jackson Dec. ¶24, Defendant's Tab B: pp. 131-132, Tab D: ¶¶9-10, Tab E: ¶17].

In September 2009, Katie Cameron, white female, was chosen as Disciplinary Hearing Officer, because of company paid pre-training that she had received years prior. Neither this training nor position was not posted[7] or advertised to offer all employees equal opportunity for this training.  [Tab C: Jackson Dec. ¶42, Defendant's Tab B: p. 133, Defendant's Exh. 86, Exh. 8, Tab D: ¶9].

### 5) Plaintiff's Allegations Regarding Training

Plaintiff did not make any allegations about the CCA Learn Program. Plaintiff allegations refer to the Eastern Kentucky University courses that could have lead to a Master's of Library Science or any other degree to enhance her chances to promote at Defendant. [Tab C: Exh. C-11]. Plaintiff never thought that a waiver could come from Easter Kentucky University. After completing a degree at EKU there would not be a requirement for a waiver. (See Plaintiff's Response in Opposition to Defendant's Statement of Undisputed Material Facts ¶¶ 57-58).


### B.    Plaintiff's Overtime Claims.

The facts demonstrate that Plaintiff worked in a non-exempt position for which she was not paid overtime. Plaintiff worked between 7.5 to 10 hours a week of overtime from April to September, 2009 for which she was not paid overtime wages. [Tab C: Jackson Dec. ¶29, Defendant's Tab B: pp. 48-49, 60, Defendant's Exh. 28]. From September 2009 until she was terminated Plaintiff continued to work 5 – 10 hours overtime per week for which she was not paid. [Id.]. Defendant

---

[7] Please note that CCA didn't even allow current Assistant Shift Supervisors or Lieutenants to have an opportunity to apply for Disciplinary Hearing Officer.

has not offered any evidence is support of its summary judgment that Plaintiff did not work overtime.

Defendant knew that Plaintiff was working overtime because of her numerous complaints to management and her formal grievances. Plaintiff repeatedly told her Human Resource Manager, the Assistant Warden and Warden that she was working overtime but not being paid for the overtime work. [Tab C: Jackson Dec. ¶ 31]. Defendant assured Plaintiff that she would be hired as librarian soon and be placed on a salary rather than hourly wage. [Tab C: Jackson Dec. ¶ 34, Tab D: ¶ 12]. Defendant refused to pay Plaintiff overtime, but never instructed her not to work overtime. [Tab C: Jackson Dec., ¶ 31]. On one occasion, Defendant allowed Plaintiff to use two (2) hours of overtime to compensate her for less than forty (40) hours of work on the time clock at the office. If Defendant allowed her to use overtime to meet a forty hour week, then it was aware that Plaintiff was working overtime. [Defendant's Tab B: pp. 49-50, 57] Tab C: Jackson Dec., ¶ 34] Defendant was aware of Plaintiff working overtime because of her numerous complaints to management and grievances. [Defendant's Tab B: 48-50, 52, 57, 60-61, Tab C: Jackson Dec.¶ 30-32, 43, Defendant's Exh. 28, Defendant's Exh. 38].

## C. Plaintiff's Hostile Work Environment

Plaintiff further alleges that Defendant "permitted a severe and pervasive atmosphere of racial discrimination on its premises" by an overall atmosphere and routine practice of discriminating and retaliating against minorities regarding hiring, firing, promotion, failure to promote, demotion, and formal and informal discipline which also contributed to her constructive discharge. [Defendant's Tab B: pp. 167-168, 172-173; Tab C: Jackson's Depo. ¶¶ 20-21, 37-41; Tab D: ¶11; Exh. F; Exh. E ¶¶ 5-9, 11, 12, 13; Tab G: ¶¶ 5-14]

## D. Plaintiff's Retaliation claims under Title VII and 42 U.S.C. § 1981

6

and FLSA, Plaintiff's Intentional Infliction of Emotional Distress and
Constructive Discharge Claims

Plaintiff contends that Defendant retaliated against her by: (1) Failure to
fulfill that promise is a substantial detrimental change in the conditions of
employment; (2) providing her inadequate support (e.g. forcing to do two peoples'
jobs); (3) limiting access to Defendant's internal grievance and administering her
grievances contrary to Defendant's policy; (4) Defendant did little to correct the
problem and its investigation was "hardly a textbook model of competent and
efficient responsiveness ; (5) failing to promote or provide training or development
opportunities; (6) her accommodations for her illnesses were revoked by her
harasser, Orsolits, white male, after they were permitted by her immediate
supervisor [Tab C; Exh. C-5]; (7) unfairly issuing memorandums without merit in
an effort to harass Plaintiff; (8) providing false information about terminating her
medical benefits which caused her not to be able to seek medical attention during a
period that she was actually covered. [Tab C: Jackson Depo.: ¶¶ 77- 78, Tab C:
Exh. C-9]; (9) providing false information to the EEOC regarding payment for
overtime hours worked and promotions; (10) Constructive Discharge; and (11)
meritless opposition to her unemployment benefits.


## ARGUMENT AND CITATION TO AUTHORITY

### I.

**A.**    **Defendant's Purported Reasons Not to Promote Plaintiff Are a
Pretext to Discriminate Against Plaintiff.**

1)    Defendant asserts that it is entitled to summary judgment on
Plaintiff's race claims under Title VII and Section 1981 because the librarian
position was not (1) vacant; and (2) she did not meet the minimum qualifications

7

of the position since the library science degree was not waivable. [Doc. No. 62.1, p. 16]. Defendant's purported reasons for failing to hire Plaintiff as librarian were a pretext to discriminate against Plaintiff. If the employer proffers a legitimate reason for its employment action, the Plaintiff must show then show that the reason is "a pretext for unlawful discrimination." *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008). Pretext may be shown by demonstrating that the proffered reason is false or unworthy of belief. *St. Mary's Health Ctr. V. Hicks*, 509 U.S. 502, 515 (1993); *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376-77 (11th Cir. 1996).

Here, the disputed facts show that Defendant's proffered reasons for not promoting her – the job not being vacant and because the degree requirement was not subject to waiver – were pretextual. First, the allegation that the position was not open is disputed by Plaintiff's testimony that she was told the position was open, she was going to be hired for the position and she was performing the functions of the librarian position as well as the library aid position.[8] Moreover, Defendant's own documentation demonstrates that the position was vacant when Plaintiff applied for the position.[9] Additionally, even if Plaintiff did not formally apply, the failure to file a formal application will not bar a plaintiff from establishing a prima facie case of discriminatory hiring provided the plaintiff "made every reasonable attempt to convey his interest in the job to the employer." *Equal Employment Opportunity Comm'n v. Metal Serv. Co.*, 892 F.2d 341, 348 (3d Cir.1990) (Title VII claim).

Second, the disputed facts demonstrate that the degree was waivable. Warden Pugh admitted that Plaintiff received a waiver of the library science degree

---

[8] The U.S. Department of Labor determined that Plaintiff was performing the functions of the librarian. [Ex. 9]

[9] Defendant issued a Memorandum dated January 13, 2009 regarding the "Library Vacancy." [Defendant's Tab B, Defendant's Ex. 31; Jackson Dec., ¶ 33].

8

requirement when they previously hired Plaintiff. [Tab D: ¶ 7]. Defendant also previously allowed Plaintiff to work in the librarian position with knowledge that she lacked a degree.[10]  When she reapplied for the job, they knew she still lacked the degree, but repeatedly told her that it was waivable. Defendant allowed her to perform the functions of the librarian position. Finally, she was told that she was not being hired for the library position because of budgetary concerns – not because she was unqualified. These facts raise questions about whether Defendant's purported reasons are false or unworthy of belief.

In sum, the disputed facts demonstrate that the librarian position was vacant and Plaintiff was qualified for the position because the degree requirement had previously been waived and, based upon Defendant's comments, was waivable at the time Plaintiff sought the job in 2008. Accordingly, Defendant's purported reasons for failing to hire Plaintiff as librarian was a pretext to discriminate in violation of Title VII and Section 1981. Defendant is not entitled to summary judgment on these issues.

2) Defendant asserts that it is entitled to summary judgment on Plaintiff's race claims under Title VII and Section 1981 for the Records Manager Position (2010). Plaintiff claims that Defendant was not in compliance with its Affirmative Action Plan regarding this promotion. (Plaintiff's Statement of Material Facts ¶¶ 1-4, 17, 55) "There is no doubt that where gross statistical disparities can be shown, they alone in a proper case may constitute prima facie proof of a pattern or practice of discrimination under Title VII." *City of Richmond v. J. A. Croson Company, 488 U.S. 469, 501 (1989).* An inference of race discrimination by showing that defendants failed to implement their affirmative action plan. [(Plaintiff's Statement of Material Facts ¶¶ 3); Exh. 7]: Even where such past discriminatory acts are

---

[10]   CCA admittedly waived the degree requirement for her for her by allowing her to continue working as librarian for nearly (six) 6 months after they allegedly first discovered she lacked the degree.

time-barred for purposes of a particular claim, the Supreme Court has stated that this type of showing "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue." *Holsey v. Armour & Co., 743 F.2d 199, 207-08* (4th Cir.1984), cert. denied, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985), citing *United Airlines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). Defendant is not entitled to summary judgment on these issues.

3) Defendant asserts that it is entitled to summary judgment on Plaintiff's race claims under Title VII and Section 1981 for the Unit Manager Position (2009)[11]. Plaintiff claims that this position was not posted and that the Defendant allowed Wheaton, white male, the opportunity to train in this position for months before placing him in the position without posting it. Plaintiff also testified that she checked the boards weekly. [Defendant's Tab B: p. 126, Tab C: ¶26, Tab D: ¶10, Tab E:¶15, 17] In *Williams v. Giant Food Incorporated*, et al (No. 03-1628) (U.S. Court of Appeals, 4th Cir., decided June 4, 2004), William's testimony is sufficient to create a genuine issue of material fact concerning Giant Food's posting of the April 1998 and November 1998 promotion opportunities in her stores. Title VII makes it illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . ." 42 U.S.C. § 2000e-2(a)(1). Where, as here, a party seeks to establish discrimination through circumstantial evidence, we evaluate a Title VII claim under the framework established in *McDonnell Douglas Corp. v. Green*, 411

---

[11] Contrary to Fran Hartley's Affidavit [Defendant's Tab A: ¶10], CCA's Job Posting Policy 3-13 only has the exceptions listed on page 2 of 6, C.1 [Exh. 4] , which is in accordance with the Department of Labor, Office of Federal Contract Compliance Programs, 41 CFR Part 60-250, mandatory listing requirements within this contractor's (CCA's) and CCA policy 1-5. [Exh. 1]  Positions that are filled internally are only excluded from state-wide advertising.  [Exh. 4].

10

U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the McDonnell Douglas framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). The methods and criteria for presenting a prima facie case vary and depend to a large degree on the employment situation. Id.; see, e.g., *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1185 (11th Cir. 1984). For a failure to promote claim, the plaintiff establishes a prima facie case by showing that: (1) s/he is a member of a protected group; (2) s/he was qualified for and applied for the promotion; (3) s/he was rejected in spite of his qualifications; and (4) the person who received the promotion was not a member of the plaintiff's protected group. *Walker v. Mortham*, 158 F.3d 1177, 1185-93 (11th Cir. 1998). Where an employer does not formally announce a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show that he applied for the position, but only that the employer had some reason to consider him for the position. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005). Deviation from company policy can be circumstantial evidence of discrimination, especially where the rules were bent or broken to give a non-minority applicant an advantage. See Carter v. Three Springs Residential Treatment, 132 F.3d 635, 644 (11th Cir. 1998); see also *Berg v. Fla. Dept. of Labor and Employment Sec., Div. of Vocational Rehab.*, 163 F.3d 1251, 1255 (11th Cir. 1998) - rev'd on other grounds, 546 U.S. 454 (2006) (employer's failure to post a job vacancy constitutes circumstantial evidence of discrimination where employer had a policy of posting job vacancies especially where that failure gave an edge to a candidate of a different race); *Bass v. Bd. of County Comm'rs, Orange County*, 256 F.3d 1095, 1108 (11th Cir. 2001). There is also an issue of credibility regarding whether this position was posted. [Tab C: ¶26, Tab D:¶10, Tab E:¶15, 17]. Moreover, "Issues of

11

credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n. 7 (11th Cir. 2003). The Plaintiff can establish prima facie in that she is an African American female, who met the minimum qualifications with a Master's degree [Tab C: Exh. C-1], she was not permitted to apply because the position was not posted according to policy, and because the position was awarded to a white male, T. Wheaton. [Exh. 19[12], Tab C: ¶26, Tab D:¶10, Tab E:¶15]. Unit Manager was an exempt and supervisory position which would have promotion for the Plaintiff and would qualify under Patterson. The Supreme Court there said that whether a promotion claim is actionable under section 1981 depends upon "whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." *Patterson*, 491 U.S. at 185, 109 S.Ct. at 2377. Accordingly, Defendant is not entitled to summary judgment on these issues.

4) Defendant asserts that it is entitled to summary judgment on Plaintiff's race claims under Title VII and Section 1981 because the Disciplinary Hearing Officer Position (2009)[13]. "[T]he failure to apply for a job does not preclude recovery if a claimant can demonstrate that (s)he would have applied but for an accurate knowledge of the employer's discrimination and that (s)he would have been discriminatorily rejected had he actually applied." *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir.1998); *Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1451 (4th Cir.1990). Cf. *Teamsters*, 431 U.S. at 365-66, 97 S.Ct. 1843. For

---

[12] Plaintiff contends that Defendant did not post this position by rather allowed Wheaton to put in an application and interview only Wheaton without posting the position. There is a credibility issue regarding whether or not Defendant actually posted this position.

[13] Contrary to Fran Hartley's Affidavit [Defendant's Tab A: ¶10], CCA's Job Posting Policy 3-13 only has the exceptions listed on page 2 of 6, C.1 [Exh. 4] , which is in accordance with the Department of Labor, Office of Federal Contract Compliance Programs, 41 CFR Part 60-250, mandatory listing requirements within this contractor's (CCA's) and CCA policy 1-5. [Exh. 1] Positions that are filled internally are only excluded from state-wide advertising. [Exh. 4].

a failure to promote claim, the plaintiff establishes a prima facie case by showing that: (1) s/he is a member of a protected group; (2) s/he was qualified for and applied for the promotion; (3) s/he was rejected in spite of his qualifications; and (4) the person who received the promotion was not a member of the plaintiff's protected group. *Walker v. Mortham*, 158 F.3d 1177, 1185-93 (11th Cir. 1998). Where an employer does not formally announce a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show that he applied for the position, but only that the employer had some reason to consider him for the position. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005).

The Plaintiff can establish prima facie in that she is an African American female, who met the minimum qualifications with a Master's degree [Tab C: Exh. C-1], she was not permitted to apply because the position was not properly identified in the posting according to policy, and because the position was awarded to a white female, Katie Cameron. [Exh. 8, Tab C: ¶24, 42, Defendant's Tab B: pp. 131-132, Tab D: ¶¶9-10, Tab E: ¶17]. The plaintiff also claims futility because the Defendant provided Cameron with paid training that was a requisite for the DHO position. We note that a plaintiff alleging discrimination need not show he applied for a job or promotion if doing so would have been futile, *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 367 (1977), and that this principle applies to cases where the employer has a "consistently enforced discriminatory policy" that will deter applicants who are aware of the policy from applying because they know they face "certain rejection." Id. at 365. There is also an issue of credibility regarding whether this is a position or a post. [Defendant's Tab A: ¶24, A-2, Exh. 3, Exh. 1] Moreover, "Issues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court

deciding summary judgment." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n. 7 (11th Cir.2003).

### B.   Plaintiff Satisfies A Prima Facie Case of Violation of the FLSA's Overtime Provisions and Retaliation

1) **Plaintiff Satisfies A Prima Facie Case of Violation of the FLSA's Overtime Provisions**

Plaintiff satisfies her prima facie case for unpaid overtime under the FLSA. As mentioned by Defendant, a prima facie case for unpaid overtime under the FLSA requires the Plaintiff to demonstrate that (1) she worked overtime without compensation, and (2) her employer had knowledge, or should have knowledge of her overtime work. *See Ekokotu v. Fed. Express Corp.*, 408 Fed. Appx. 331, 340 (11th Cir. 2011). Plaintiff satisfies each of these elements.

First, Plaintiff worked overtime for which she was not paid. Plaintiff testified that she worked 7.5 – 10 hours of overtime when she first started working as library aide and 5 – 10 hours per week overtime during the remaining time Defendant employed her as library aide. [Defendant's Tab B, pp. 48, 49, 60; Tab C: Jackson Dec., ¶ 29]. Second, Defendant had knowledge that Plaintiff was working overtime without pay. Plaintiff repeatedly notified the Human Resources Manager, Assistant Warden, Warden, and her supervisor that she was working overtime without compensation. [Tab C: Jackson Dec., ¶ 10]. In addition, she filed two formal written grievances containing complaints that Defendant was not paying overtime. [Defendant's Tab B: pp.52, 166, 184; Exh.'s 28 and 38]. Finally, Plaintiff was repeatedly sent work assignments from her supervisor while she was working at home. [Jackson Dec., ¶ 32, Tab C: Exh. 7]. The complaints to Defendant and the formal grievances filed with Defendant establish Defendant's

actual knowledge of Plaintiff's overtime work.

In addition to actual knowledge, Defendant also had constructive knowledge of the following circumstances which should have alerted the Defendant that Plaintiff performed work beyond her scheduled hours without pay: 1) McLendon was requesting work while I was on FMLA leave [Tab C: Exh. 7]; 2) Plaintiff had remote access to Defendant's Citrix computer network and share drive and was receiving and sending emails to her supervisor that showed that she was sending them from home through the Citrix network [Jackson Dec., ¶ 32, Tab C: Exh. 9]; 3) Plaintiff was doing the job of Librarian and Library Aide which is illustrated by work performance reviews from 2008 - 2009 [Exh. 25]; 4) The Contract Librarian only worked four (4) hours per quarter and could not have been performing the duties of her job description. [Tab C: Exh. 4, Jackson Dec., ¶ 36, Exh. 88]; 5) It can be inferred that Plaintiff would have reported her overtime if she had not been discouraged from doing so. [Tab B: pp. 49-50, 59]. "[I]f the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted." *Reich v. Dep't of Conservation and Nat. Res.*, 28 F.3d 1076, 1082 (11th Cir.1994) (citing 29 C.F.R. § 785.11). Accordingly, Defendant is not entitled to summary judgment on this issue.[14]

### 2) Plaintiff Satisfies A Prima Facie Case of FLSA Retaliation

Plaintiff satisfies her prima facie case for retaliation under the FLSA. A prima facie case for retaliation under FLSA requires that the plaintiff demonstrate that: (1) Plaintiff engaged in protected activity under the FLSA; (2) Plaintiff

---

[14]    Although Defendant argues that their purported overtime policy shields them from liability, this argument fails for two reasons. First, the policy cited by Defendant was not in effect at the time Plaintiff claims she was not paid overtime. Second, Defendant has not cited any authority that an employer may use their overtime policy to shield them from liability when they have been notified that the employee was working overtime. An employer may discipline an employee for not working overtime, but cannot refuse to pay the employee. Third, unlike Plaintiff in *Brown vs. Script, LLC*, 700 F.3d 1222 (10th cir. 2012), Defendant did not provide Plaintiff with a method to records overtime worked from home.

subsequently suffered an adverse employment action; and (3) A causal connection existed between employee's protected activity and the adverse action.

First, Plaintiff verbally complained and filed two formal written grievances containing complaints that Defendant was not paying overtime [Tab B: pp. 49-50, 52, 166, 184 Exh. 28, Exh.38]. In *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011), the Court addressed FLSA retaliation "filing any complaint" and held that an oral complaint is sufficient to trigger retaliation protection.; Second, Plaintiff suffered the following adverse actions in retaliation for complaining: (1) Failure to fulfill promise to promote to Librarian was a  a substantial detrimental change to the conditions of her employment; (2) providing her inadequate support and adding duties to her workload [Defendant's Tab B: p. 184] (e.g. forcing to do two peoples' jobs); (3)  limiting access to Defendant's internal grievance and administering her grievances contrary to Defendant's policy; (4) Defendant did little to correct the wage issue and its investigation was "hardly a textbook model of competent and efficient responsiveness ; (5) failing to promote or provide training or development opportunities; (6) her accommodations for her illnesses were revoked by her harasser, Orsolits, white male, after they were permitted by her immediate supervisor, McLendon [Tab C; Exh. C-5]; (7) unfairly issuing memorandums without merit in an effort to harass Plaintiff; (8) providing false information about terminating her medical benefits which caused her not to be able to seek medical attention during a period that she was actually covered. [Tab C: ¶ 77, 78, Tab C: Exh. C-9]; (9) providing false information to the EEOC regarding payment for overtime hours worked[15]; (10) Constructive Discharge; and

---

[15] CCA's Position Statement to the EEOC also states, "Although there was no objective support for Ms. Jackson's allegation that she worked from home and not been paid, as a result of the investigation, the Facility paid Ms. Jackson for hours she allegedly worked at home without permission." Please note that after the investigation was concluded on or about March 25, 2010, Jackson did not receive any additional pay for the hours that she worked at

(11) meritless opposition to her unemployment benefits.  Third, to demonstrate a causal connection, a plaintiff "must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not" engaged in a protected activity (*Adair v. Charter County of Wayne*, 452 F.3d 482 (6th Cir. 2006), quoting *Allen v. Michigan Dep't of Corrections*, 165 F.3d 405 (6th Cir.1999)). Plaintiff has made a sufficient prima facie showing of causation to avoid summary judgment when she showed that shortly after filing a verbal complaint and FLSA grievance a pattern of retaliatory conduct began that was apparently related to her FLSA.   Close temporal proximity between the protected activity and adverse employment action is also proof of a causal connection. "For purposes of a prima facie case, 'close temporal proximity' may be sufficient to show that the protected activity and the adverse action were not 'wholly unrelated.'" *Gupta*, 212 F.3d at 590. If there is temporal proximity, a causal link may be established between the protected activity and the adverse employment action. See, *Donnellon v. Fruehauf Corp.*, 794 F.2d 598 (11th Cir. 1986) (finding that one month was evidence of retaliation); See *Farley v. Nationwide Mut. Ins. Co.*, 197 F. 3d 1322, 1337 (11th Cir. 1999) (seven weeks between complaint and termination establishes causal connection). *Padron*, 196 F. Supp. 2d at 1256 (month or two could constitute close temporal proximity). Contradictions in the Defendant's investigation and Position Statement to the EEOC also illustrate pretext. 'the district court must evaluate whether the plaintiff has demonstrated such weaknesses,' implausibility's, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence." *Flagg v. Collier County*, 2003 U.S. Dist. LEXIS 25580, *17 (D. Fla. 2003) (quoting *Silvera v. Orange County Sch.*

---

home. Additionally, there is no indication that Golden investigated the additional hours that Plaintiff worked and complained of in her grievance. [Exh. 41, Exh. 9]

17

Bd., 244 F.3d 1253, 1258 (11th Cir. 2001) (*quoting Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). Defendant is not entitled to summary judgment on these issues.

## C.   Plaintiff Satisfies A Prima Facie Case of Hostile Work Environment

In order to establish a prima face case for a hostile work environment claim, a plaintiff must demonstrate (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment [was] based on a protected characteristic . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment . . ; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).

First, Plaintiff is an African American female. Second, verbally complained and filed two formal written grievances containing complaints that Defendant was retaliating and creating a hostile work environment [Tab C: Jackson Dec. ¶¶ 19, 37, 41, 51, 55, 67, 68,  Exh. 28, Exh.38]; Third, Plaintiff claims that the harassment were based on her reporting wage violations, race discrimination, and a hostile work environment [Exh. 6, Exh. 28, Exh.38]; Fourth, The Plaintiff suffered the following adverse actions in retaliation for complaining: (1) Failure to fulfill promise to promote to Librarian was a  substantial detrimental change to the conditions of her employment; (2) providing her inadequate support and adding duties to her workload [Defendant's Tab B: p. 184] (e.g. forcing to do two peoples' jobs); (3)  limiting access to Defendant's internal grievance and administering her grievances contrary to Defendant's policy; (4) Defendant did little to correct the

18

wage issue and its investigation was "hardly a textbook model of competent and efficient responsiveness ; (5) failing to promote or provide training or development opportunities; (6) her accommodations for her illnesses were revoked by her harasser, Orsolits, white male, after they were permitted by her immediate supervisor [Tab C; Exh. C-5]; (7) unfairly issuing memorandums without merit in an effort to harass Plaintiff; (8) providing false information about terminating her medical benefits which caused her not to be able to seek medical attention during a period that she was actually covered. [Tab C: ¶ 77, 78, Tab C: Exh. C-9]; (9) providing false information to the EEOC regarding payment for overtime hours worked[16] and promotions; (10) Constructive Discharge; and (11) meritless opposition to her unemployment benefits.  Fifth, all of these instances were reported to Warden Wells, who was the decision maker in Plaintiff's claims and in each claim by her co-workers.

The Plaintiff also claims that there was a general atmosphere of discrimination upheld by Warden Wells[17] that should be considered with other evidence bearing on motive of the Defendant in deciding whether a plaintiff has met her burden of showing that the defendant's articulated reasons for race discrimination are pretextual. "Plaintiff can meet this requirement by showing that the same supervisors were involved in prior discriminatory employment actions." Thus, in *Mendelsohn v. Sprint/United Management Co.*, 587 F.Supp.2d 1201, 1208 (D.Kan. 2008), the Court held that "me too" evidence within plaintiff's supervisory chain of command would be admissible, while "me too" evidence outside that chain of command would be excluded. These other acts which were allowed to

---

[16] Id.

[17] For decisions made by Wells throughout Plaintiff's motion, please apply the *Staub v Proctor Hospital* decision issued by the U.S. Supreme Court in March 2011, essentially holding under the "cat's paw" theory that employers may be liable for discrimination if the decision maker relies on input from subordinates with discriminatory intent, even if the decision maker did not have discriminatory motives.

continue under the directive of by Warden Wells within the facility added to the Plaintiff's fear of retaliation and emotional strain. [Exh. D ¶11, Exh. F, Exh. E ¶¶ 5-9 , 11, 12, 13 Tab G: ¶¶ 5-14] Other acts admissible as other act evidence under FRE 404(b) to show the defendant employer's "the intent of *Bagby Elevator* to discriminate and retaliate." *Goldsmith*, 513 F.3d at 1286 (citing *Powers v. United States*, 996 F.2d 1121, 1123-24 (11th Cir. 1993) ("We may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below."). According to Smith, "[a] triable of issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a 'convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" 644 F.3d at 1328 (quoting *Silverman v. Board of Education*, 637 F.3d 729, 734 (7th Cir. 2011)). Defendant is not entitled to summary judgment on these issues.

**D.**   **Plaintiff Satisfies A Prima Facie Case of Retaliation under Title VII/ 42 U.S.C.**

To establish retaliation under Title VII and § 1981, a plaintiff may prove that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action. *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1212-13 (11th Cir. 2008). To satisfy the adverse-action requirement, the plaintiff may show that "a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)."The causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th

20

Cir. 2001) (quotations omitted). "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." *Clover v. Total Sys. Serv., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (quotation omitted).

First, Plaintiff verbally complained and filed two formal written grievances containing complaints that Defendant was not paying overtime [Tab B: pp. 49-50, 52, 166, 184 Exh. 28, Exh.38]. Second, Plaintiff suffered: (1) Failure to fulfill promise to promote to Librarian was a substantial detrimental change to the conditions of her employment; (2) providing her inadequate support and adding duties to her workload [Defendant's Tab B: p. 184] (e.g. forcing to do two peoples' jobs); (3) limiting access to Defendant's internal grievance and administering her grievances contrary to Defendant's policy; (4) Defendant did little to correct the wage issue and its investigation was "hardly a textbook model of competent and efficient responsiveness ; (5) failing to promote or provide training or development opportunities; (6) her accommodations for her illnesses were revoked by her harasser, Orsolits, white male, after they were permitted by her immediate supervisor [Tab C; Exh. C-5]; (7) unfairly issuing memorandums without merit in an effort to harass Plaintiff; (8) providing false information about terminating her medical benefits which caused her not to be able to seek medical attention during a period that she was actually covered. [Tab C: ¶ 77, 78, Tab C: Exh. C-9]; (9) providing false information to the EEOC regarding payment for overtime hours worked[18] and promotions; (10) Constructive Discharge; and (11) meritless opposition to her unemployment benefits. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261 (C.A. 11, Jan. 17, 2008)- After Goldsmith was terminated, he filed a claim for unemployment benefits, which was initially denied because of opposition

---

[18] Id.

by *Bagby Elevator*. Retaliation is particularly likely to be found where opposition to unemployment benefits is meritless. See, e.g., Steele v. Shafer, 535 F.3d 689, 696 (D.C. Cir. 2008). Third, the retaliation began immediately after the Plaintiff began to complain about protected activity [Exh. 6, Exh. 28, Exh. 38]. *Fe R.R. Co. v. White*, 126 S. Ct. 2405 (2006), has been to find that such conduct actionable. ... the Supreme Court has already indicated can support a retaliation claim" in *Burlington v. White*); *Koger v. CT. Woody*, No. 3:09-cv-90, 2009 U.S. Dist. LEXIS 77433 (E.D. Va. Aug. 28, 2009). Defendant is not entitled to summary judgment on these issues.

### E.   Plaintiff Satisfies A Prima Facie Case of Intentional Infliction of Emotional Distress (IED) and Constructive Discharge

First, Plaintiff Defendant's conduct was intentionally in reckless disregard of the requirements of the FLSA Act, and the Defendant should have inquired further into whether its conduct was in compliance with the Act, but failed to make adequate further inquiry. The Plaintiff had repetitively reported overtime violations, wage violations, and race discrimination regarding Defendant's promotional policies in disregard to equal opportunity, posting requirements, and affirmative action. Defendant continued to violate these laws even after they were bought to their attention. "Malice or reckless indifference is established by a showing that the employer discriminated in the face of the knowledge that its actions would violate federal law." *Miller*, 277 F.3d at 1280 (citing Kolstad, 527 U.S. at 536, 119 S.Ct. at 2125).

Before finding a constructive discharge, the Eleventh Circuit requires `pervasive conduct by employers' ... and `a high degree of deterioration in an employee's working conditions.'" *Mangrum v. Republic Indus., Inc.*, 260 F.Supp.2d

22

1229, 1253 (N.D.Ga.2003) (citing Hipp, 252 F.3d at 1231 and *Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1527 (11th Cir.1991)). Plaintiff claims that all of the aforementioned adverse actions that she endured; along with years of discrimination, and the Defendant's hostile work environment prior to her constructive discharge, was ample evidence for the district court, as trier of fact, to find that she was subjected to treatment sufficiently intolerable that a reasonable employee would have felt compelled to resign.   See *Satterwhite v. Smith*, 744 F.2d 1380, 1382-83 (9th Cir.1984) (affirming the district court's finding of a constructive discharge on similar facts, and discussing other similar decisions). Defendant is not entitled to summary judgment on these issues.

## II. <u>Defendant Has Not Demonstrated That Plaintiff's Claims Are Time Barred</u>.

### 1.  <u>Title VII and Section 1981 Claims Are Not Time Barred</u>

Plaintiff's claims were the subject of her EEOC charge filed January 27, 2010, her Intake Questionnaire, or can be reasonable expected to grow out of the charge. As noted, the plaintiff completed an intake questionnaire in late December 2009. [Exh.6]. Plaintiff checked the boxes for "race," "sex," "retaliation," and "continuing action." [Exh. 6]

Plaintiff also notes that, along with the intake questionnaire, she submitted a three (3) page typed attachment to the EEOC [Exh. 6]; which contains the following paragraphs: (A) McRae Correctional Facility (MCF), has a corporate culture that breeds, supports, and protects a long-standing pattern of discriminatory behavior. This pattern is shown in their promotion procedures, placement of non-minorities in oppositions to take advantage of opportunities for training to advance up the career ladder, selection of "favored for promotion" employees to assume the

duties of executive staff in their absence and in that minorities are subject to "differential treatment" in demotion, investigation, and firing procedures. I, as well as other employees, am aware of these conditions and have witnessed MCF violate its own policies in these regards, however, ~~but~~ had chosen to work harder to prove myself worthy of these promotions in an effort to avoid retaliation or other unjust treatment by filing a claim sooner Plaintiff also submitted a Pre-Determination Reply Letter which contained her claims of a constructive discharge, several references to Defendant's hostile work environment, Defendant not abiding by their affirmative action plan, and all posting required by federal contractors are not posted. [Exh. 6]. Additionally, Plaintiff's post-employment retaliation and other claims could reasonably be expected to "grow out of" her race discrimination and retaliation claims. A plaintiffs complaint is "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Georgia Dept. of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004) (internal citation omitted). Resolution of this issue requires an examination of the documents the plaintiff placed before the EEOC.

### 2. Plaintiff's FLSA Claims Are Not Time Barred.

The FLSA allows a three year statute of limitation for willful claims. A claim is willful if Defendant knew or showed reckless disregard that its conduct violated the FLSA. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1280 (11th Cir. 2008). "Reckless disregard" means "the failure to make adequate inquiry into whether conduct is in compliance with the [FLSA]." 5 C.F.R. § 551.04. Plaintiff was a non-exempt employee. According to Plaintiff, she repeatedly notified Defendant that she was working overtime without compensation. Defendant failed to pay Plaintiff the overtime or investigate her claims. Based upon these facts, a genuine issue exists as to whether Defendant acted willfully in

failing to pay overtime to Plaintiff.  Thus, the three year statute may be applicable, and Plaintiff's claims are not barred by the statute of limitations.

Plaintiff affirms that she did disagree with Defendant's "normal business decisions" because they included: (1) violations of Defendant's policies and procedures regarding promotions and posting positions; (2) ignoring complaints regarding overtime under the Fair Labor Standards Act; (3) violations of their Affirmative Action Plan; (4) violations of the Secretary of Labor's Wage Determination; (5) false statements in their Position Statement to the EEOC; (6) retaliating in numerous ways against employees for complaining about protected activity; and  (7) creating a hostile and discriminatory working environment for minorities. No employee should have to endure these violations masqueraded as "normal business decisions."

## CONCLUSION

For the foregoing reasons, Defendant is not entitled to summary judgment and the Plaintiff respectfully requests the Court to deny summary judgment in favor of Defendant.

Respectfully Submitted,

This 28th day of December, 2013.

Verneisa Jackson, Pro-Se

17

# <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have this day served the foregoing upon all parties to this case by electronically filing same with the Court.

This 30th day of December, 2013.

*/s/ Ainsworth G. Dudley*

Ainsworth G. Dudley