UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| VERNEISA JACKSON, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * CIVIL ACTION NO: 3:11-cv-111- |
| | * DHB-WLB |
| CORRECTIONS CORPORATION OF | * |
| AMERICA, | * |
| | * |
| Defendant. | * |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND CONCLUSIONS OF LAW

NOW COMES, the Plaintiff, Verneisa Jackson ["Jackson"], by and through her undersigned counsel, in pursuant to Local Rule 56.1, and hereby submits the following responses to Corrections Corporation of America's Statement of Undisputed Material Facts [62-22] in support of her Response in opposition to Defendant CCA's Motion for Summary Judgment [62].

### I. Plaintiff's Statement of Disputed Facts

1. **Response: Admitted**

2. **Response: Admitted**

3. **Response: Admitted**

1

4. **Response: Admitted**

5. **Response: Denied.** Upon hiring Jackson and before November 2004, CCA was aware of her qualifications and that she qualified for the Librarian[1] position prior to Jackson's request for a salary increase. [Tab C: Jackson Dec. ¶¶4, 5, 6, Exh. C-1, Exh. C-2, Defendant's Exh. 41, Tab D: ¶7].

6. **Response: Admitted.**

7. **Response: Admitted.**

8. **Response: Admitted** that Jackson knew the job duties and pay for the Library Aide position. **Qualified** that Jackson voluntarily applied after she discussed the condition of seeking a waiver to qualify for the Librarian position with Shannon Pooler, former Human Resource Manager and Warden Wells. [Tab C: Jackson Dec. ¶26].

9. **Response: Qualified.** Jackson did not indicate this condition on her application for the library aid position; however, she did speak to Shannon Pooler, Human Resource Manager, and Walt Wells, Warden, before applying to the position and they both affirmed that they were willing to seek the waiver to have her reinstated to Librarian. [Defendant's Tab B: 157-

---

[1] Shannon Pooler stated in investigation [Defendant's Exh. 41], "during the initial accreditation process, the facility had the services of a contract librarian and no deficiencies applicable to the librarian position or library service were noted." Please note that I was the full-time Librarian during this timeframe.

158, Tab C: Jackson Dec. ¶26].

10. **Response: Admitted.**

11. **Response: Qualified.** Jackson acknowledges that she does not have a Library Science degree but met American Correctional Association (ACA) standards to qualify and maintain the Librarian position in 2003-2005. [Tab C: Jackson Dec. ¶¶5, 6, 58; Tab C: Exh. C-2; Defendant's Exh. 41].

12. **Response: Admitted.**

13. **Response: Denied** that Jackson acknowledged that the Librarian position was not an open position. In fact Jackson stated that the position was available.[ Defendant's Tab B: pp. 173- 175] Also, Warden Wells, Pam Aycock, Fran Hartley all indicate in the Plan of Action dated January 13, 2009, that the full-time librarian position was available. [Defendant's Exh. 31, Defendant's Exh. 31]. **Denied** that Jackson testified on this page that she was not aware of any employee receiving an educational waiver for a job position. [Defendant's Tab B: p. 136].

14. **Response: Admitted** that Jackson was told around November 2009, that she would not be considered for the library position. **Denied** that Jackson was told that it had anything to do with the waiver, in fact, Jackson was told that they were not going to hire a full-time Librarian which contradicts the Plan

3

of Action dated January 13, 2004. [Defendant's Exh. 31]. Jackson was never told by anyone at CCA that she was not hired because she lacked the library science degree. There is material issue as to whether or not Jackson was qualified. [Tab C: Jackson Dec. ¶45, Exh. C-1, Exh. C-2]

15. **Response: Qualified.** Jackson believes that not being reinstated to the Librarian position under the same conditions that she qualified for the position in 2003 was one of the adverse actions that she based her race discrimination and retaliation claims upon. [Defendant's Tab B: pp. 170, Tab C: Exh. C-1, Exh. C-2].

16. **Response: Admitted.**

17. **Response: Denied.** Jackson testified that she witnessed Wooten acting in the Records Manager position after she was not selected for the position in 2004 [Defendant's Tab B: pp. 150, Tab C: Jackson Dec. ¶¶15, 18; Tab D: ¶8, Tab E: ¶16], observed that positions were not being posted on the posting board [Defendant's Tab B: pp. 172,181-183, Tab C: Jackson Dec. ¶¶24, 25, 42, Tab D: ¶¶9-10, Tab E: ¶¶15, 17], Affirmative Action Violations regarding departments with no minorities in supervising roles or postings for educational opportunities [Jackson Dec. ¶¶54, Defendant's Tab B: p. 210], no equal opportunities for training [Defendant's Tab B: 147, Tab C: Jackson

Dec. ¶¶15, 19, 24, 42, Wheaton being cherry-picked in 2008 to train as unit manager before he was given the position in 2009 [Tab C: Jackson Dec. ¶25, Tab D: ¶11, Tab E: ¶5-9], subjective scoring on interview panels; [Defendant's Tab B: pp. 208, Tab C: Jackson Dec. ¶54.]; medical insurance issues [Defendant's Tab B: p. 234]; unjust write ups [Defendant's Tab B: pp. 190-191, Tab C: Jackson Dec. ¶55].

18. **Response: Qualified.** Jackson took issue with the "management style" of Orsolits that caused him to make decision to harass her in retaliation of her grievance, contribute to CCA's hostile work environment by harassing and adding to her job duties in an effort to harass, fail to seek remedy for her Wage and Hour, and FLSA complaints. [Defendant's Tab B: pp. 166,168, Tab C: Jackson Dec. ¶¶43-52, 55, Defendant's Exh. 28, Defendant's Exh. 38]

19. **Response: Admitted.**

20. **Response: Denied.** Jackson did not state that Orsolits relocated a co-worker. Orsolits threatened to leave Jackson without an officer; Jackson would not have disagreed if he was going to replace the officer with another officer. [Defendant's Tab B: pp. 204]

21. **Response: Admitted.**

22. **Response: Denied.** This is not the testimony on this page. [Defendant's Tab B: pp. 109]

23. **Response: Admitted** that Jackson received this memorandum which states *"the document that was notarized by you was indeed a threat to the employee in that it was **sent to the home address**."* Jackson did not notarize the envelope, could not have known where the inmate intended to mail this legal document, and was only required to ensure that she checked the inmate's identification and ensure that there were no blank lines on the document. [Defendant's Exh. 38, Defendant's Tab B: pp. 110-11, 218, Tab C: Jackson Dec. ¶55] **Denied** because Jackson's statement on this page refers only to memorandum issued on February 4, 2010, and states that Jackson answered that she did lose pay. [Defendant's Tab B: pp. 214-215] **Qualified** that Jackson did state that she felt the memorandum was racially and sexually discriminatory; this was due to her feelings that CCA was racially and sexually hostile towards minorities. [Defendant's Tab B: pp. 190-191]

24. **Response: Admitted** that Jackson was issued said memorandum. [Defendant's Tab B: pp. 111, Defendant's Exh. 38, Tab C: Jackson Dec. ¶55] **Denied** that Jackson's statement was that she did not lose pay when her

offer to work from home to accommodate her condition was rescinded by this memorandum. [Defendant's Tab B: pp. 214-215] **Admitted** that Jackson stated that she felt the memorandum was racially and sexually discriminatory. [Tab C: Jackson Dec. ¶¶55, 60].

25. **Response: Admitted.**

26. **Response: Admitted** that Kenya Golden investigated. [Defendant's Tab B: pp. 183-184] **Denied** that Kenya Golden investigated the FLSA issues in the First and Second Grievance. [Tab C: Jackson Dec. ¶68, Defendant's Exh. 41]. **Denied** that CCA's intention of objectivity is not an undisputed fact.

27. **Admitted.**

28. **Response: Qualified.** Jackson believes that the investigation report reflects that Golden did not complete her investigation and that management supplying false testimony in the investigation was due to her race complaints and to cover up violations of their contract and FLSA laws. [Defendant's Tab B: p. 184, Defendant's Exh. 41, Tab C: Jackson Dec. ¶68]

29. **Response: Qualified** that Jackson also believes the findings were incomplete, retaliatory, and bias in that the testimony of Shannon Pooler, the Human Resource Manager and Affirmative Action Coordinator, who was also responsible for the violations to conclude that there were no violations.

[Defendant's Tab B: p. 178, Defendant's Exh. 41, Tab C: Jackson Dec. ¶68]

30. **Response: Admitted** that Jackson believed that CCA did not address her grievances in accordance with CCA's Grievance Policy in that it took approximately four (4) months. [Exh. 2[2], Tab C: Jackson Dec.¶¶62-64, 67 ]

31. **Response: Denied** that the grievance addressed a complaint about being interviewed. The issue was that Jackson was told that it was mandatory, being conducted by an independent investigator, and Jackson was disappointed with being continuously given inaccurate information. Golden read Jackson her rights at the beginning of the meeting and informed her participation was not mandatory. [Defendant's Exh. 47]

32. **Response: Admitted.**

33. **Response: Admitted** that Jackson alleged constructive discharge. [Defendant's Tab B: pp. 237-238, Defendant's Exh. 59, Tab C: Jackson Dec. ¶82]. **Denied.** Jackson went on medical leave on February, 24, 2010. [Defendant's Tab B: pp. 238-239, Exh. C-9]

34. **Response: Admitted.**

35. **Response: Admitted** that Jackson received notification that she did not receive the Records Manager position. [Defendant's Tab B: pp. 149-150,

---

[2] Policy 3-6-1, p. 3 of 8, 1.b.iii., states, "Within seven (7) calendar days of receipt of the grievance form, the

Defendant's Exh. 15] **Denied.** Jackson believes that Mr. Wooten began to act in this position because she saw him acting in the role after she was not selected.[ Defendant's Tab B: pp. 150-151, Tab D: ¶¶ 7, 8, 10, Tab E: ¶16]

36. **Response: Admitted.**

37. **Response: Qualified.** Jackson testified that she believed it was Ms. Hart or Ms. Durden.[ Defendant's Tab B: pp. 152-153]

38. **Response: Denied.** Jackson testified that she definitely applied for personnel investigator and believes it was in 2004 or 2005. [Defendant's Tab B: p. 120-121]

39. **Response: Denied.** This is not an undisputed fact. [Defendant's Tab A: Hartley Aff. ¶8]

40. **Response: Admitted** as to the first statement. **Denied** that Jackson had no personal knowledge of Bentson's qualification as reflected in Jackson's testimony. Jackson also testified that she believed that the scores were subjective and that Gunn purposely gave her a low score so that Bentson would get the job. [Defendant's Tab B: pp. 208-210, Exh. 7, Tab C: Jackson Dec. ¶54]

41. **Response: Admitted** that Jackson does not believe that selecting T. Jordan

---

*grieving employee's supervisor will meet with the employee to discuss the grievance."*

9

for one of the Unit Manager positions was discriminatory; however, Jackson does feel that not being considered for the second unit manager position that was to be selected from that interview board that began on January 17, 2008, and ended on January 28, 2010 was discriminatory. [Tab C: Jackson Dec. ¶ 25, Tab D: ¶10, Tab E: ¶17, Exh. 19]

42. **Response: Qualified.** Admitted that the job was not posted. [Defendant's Tab B: pp. 173-175] **Denied** that she acknowledged that she didn't formally apply. [Defendant's Tab B: pp. 173-175, Tab C: Jackson Dec. ¶33, Defendant's Exh. 31]

43. **Response: Denied.** Whether CCA provided a waiver to Jackson in 2003 is not an undisputed fact. Jackson testified that she was told by her interviewers, Robert Herndon and Galey Gates that the position required a library science degree which she did not possess, but that the degree was waivable. Jackson was told that CCA would seek a waiver and Jackson was hired for the Librarian position in August 2003. [Defendant's Tab B: pp. 176, Tab C: Jackson Dec. ¶5, 6, 7, Tab D: ¶7]

44. **Response: Qualified.** Jackson was told at her initial interview by Robert Herndon at Galey Gates that they would seek a waiver before she could be hired as Librarian. [Defendant's Tab B: pp. 175, Tab C: Jackson Dec. ¶6,

Tab C: Exh. C-1]

45. Response: **Admitted.**

46. **Response: Qualified.** The issue in dispute is whether Wooten received a waiver of the "five years experience" requirement and/or was allowed to work under a Contract Records Manager until he met the requirement. It is undisputed that the position only required a high school diploma, thus an educational waiver would not have been required [Tab C: Jackson Dec. ¶¶13, 17, Tab D: ¶8, Tab E: ¶16].

47. **Response: Denied.** Wheaton was allowed to act as a Unit Manager from October 2008 until he was given the job in July 2009. [Defendant's Tab B: pp. 124-125, Tab D: ¶10, Exh. 19] Jackson testified that she checked the board frequently and the positions were not posted on the board.[ Defendant's Tab B: p. 126, Tab C: Jackson Dec. ¶25, Tab D: ¶ 10, Tab E: ¶¶15, 17]

48. **Response: Admitted.**

49. **Response: Denied.** SIS is listed as a position[3] on CCA's Organizational Chart. [Exh. 3]

---

[3] Contrary to Fran Hartley's Affidavit [Defendant's Tab A: ¶10], CCA's Job Posting Policy 3-13 only has the exceptions listed on page 2 of 6, C.1 [Exh. 4], which is in accordance with the Department of Labor, Office of Federal Contract Compliance Programs, 41 CFR Part 60-250, mandatory listing requirements within this

50. **Response: Denied.** This is not what CCA's policy states [Defendant's Tab A: Hartley Aff. Exh. A-2] **Denied.** Whether "post" jobs are subject to posting to internal candidates is an issue that is in dispute. [Exh. 1, Exh. 3, Defendant's Tab A: A-2]

51. Response: **Denied.** SIS is listed as a position on CCA's Organizational Chart. [Exh. 3]

52. Response: **Admitted.**

53. Response: **Admitted.**

54. Response: **Qualified** that Jackson has no personal knowledge of whether DHO was a "post", as such, this a material fact that is in dispute as to whether this "post" or position was still subject to internal posting procedures. CCA's Organizational chart and policies all suggests that DHO was a position and should have been posted. [Defendant's Tab A: A-2, Exh. 1, Exh. 3]

55. **Response: Denied.** The issue of whether DHO is a "post" or a position is in dispute. **Qualified** that Jackson never applied for Assistant Shift Supervisor because she had not been given an opportunity to get the training to pre-qualify, allowed acting as Alternate DHO and DHO was not posted with the

---

contractor's (CCA) and CCA policy 1-5. [Exh. 1] According to this policy, positions that are filled internally are only

details of the position. [Defendant's Tab A: A-2, Exh. 1, Exh. 3]

56. **Response: Denied.** Jackson alleged that CCA should have posted the EKU program that "all employees" were eligible to participate in during the time of her employment. [Tab C: Exh. C-11]

57. **Response: Denied.** Jackson did not make any allegations about the CCA Learn Program. Jackson allegations refer to the Eastern Kentucky University courses that could have lead to a Master's of Library Science or any other degree to enhance her chances to promote at CCA. [Tab C: Exh. C-11]

58. **Response: Denied.** Jackson never thought that a waiver could come from Easter Kentucky University. After completing a degree at EKU there would not be a requirement for a waiver.

59. **Response: Qualified.** Jackson also spoke with Katie Cameron about her acting as Alternate DHO. At the time, Jackson did not know she was allowed to act because she had received prior training or certification in Colorado for the DHO "post" or position. [Tab C: Jackson Dec. ¶24, 42, Tab D: ¶9]

60. **Response: Admitted.**

61. **Response: Admitted** that the policy referred to in the Hartley Affidavit

excluded from state-wide advertising.

became effective by its express terms on May 1, 2011. Plaintiff denies that it was in effect during the time she worked with Defendant. Jackson did report the time to her supervisors and complained but her supervisor's only response was that they were working on the waiver. Jackson complied with timekeeping for the time she worked on-the-clock but her supervisors never gave her a method to record the time she worked off-the-clock. [Defendant's Tab B: p. 49, Tab C: Jackson Dec. ¶¶ 30-32, 43, 45, 47, 55, Defendant's Exh. 28, Defendant's Exh. 38]

62. **Response: Admitted.**

63. **Response: Admitted** that Jackson was allowed to work from home due to irritable bowel syndrome, nose bleeds, and severe headaches. [Defendant's Tab B: pp. 49-50, Defendant's Exh. 28, Tab C: Jackson Dec. 30] **Denied** that these pages reflect that Jackson testified that she was not given permission to work overtime at home. Jackson testified continuously that management knew that she was working overtime from home. [Defendant's Tab B: 49-50, 61, Tab C: Jackson Dec. ¶30-32, 43, 45, 47, 55, Exh. C-7] Jackson testifies on these pages that McLendon was aware that she was completing tasks at home and that McLendon stated that she could only use the hours to meet 40 hours indicating that she could not claim the other

hours. [Defendant's Tab B: 49-50, Tab C: Jackson Dec. ¶30]

64. **Response: Qualified.** Jackson testified that this was an error and not an effort to report and be paid for overtime worked off the clock. Jackson had worked a Sunday, for the first time, which is the beginning of the pay week, in an effort to attempt to get work caught up before she went on stress leave. Jackson testified that she was verbally reprimanded for this time. [Defendant's Tab B: pp. 57, 59]

65. **Response: Admitted.**

66. **Response: Qualified.** Jackson testified regarding the estimate of the overtime hours that she worked from home. [Defendant's Tab B: pp. 48-49, 60, Tab C: Jackson Dec.¶ 29] Jackson testified that her supervisor knew she was working from home, called her at home for work, that she had access to the CCA's Citrix portal from home, and that she was asked to do work at home. [Defendant's Tab B: pp. 48-50, 57, 61, Tab C: Jackson Dec. 30-32, 43, Tab C: Ex. C-7].

*Respectfully Submitted,*

This 28th day of December, 2013.

_____
Verneisa Jackson, *Pro Se*

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day served the foregoing upon all parties to this case by electronically filing same with the Court.

This 30th day of December, 2013.

/s/ *Ainsworth G. Dudley*
Ainsworth G. Dudley