# EXHIBIT E

# Erika Moye Affidavit

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| VERNEISA JACKSON, LARRY JACKSON, and PAMELA KING, | * * * |
| Plaintiffs, | * * |
| v. | * CIVIL ACTION NO: * 3:11-cv-111-DHB-WLB |
| CORRECTIONS CORPORATION OF AMERICA, | * * * |
| Defendant. | * |

## AFFIDAVIT OF ERIKA MOYE

I, Erika Moye, swear and affirm under penalty of perjury that the following statements are true and correct to the best of my knowledge, information, belief, and contain only facts and present all of the information that I believe to be important:

1.      I have personal knowledge of the facts set forth herein and can provide competent testimony regarding these matters.

2.      I am over 18 years of age and reside in Dublin, Georgia.

3.      I was previously employed as a Correctional Counselor for the Defendant in this case, Corrections Corporation of America (Hereafter referred to as "CCA"), which is located in McRae, Georgia. CCA is a minimum security federal detention facility, which operates as a contractor for the U.S. Bureau of Prisons.

4.      I was employed at CCA from October 2002 through September 2012.

5.      During 2008-2012, I was harassed by my supervisors, unfairly demoted, discriminated against, subjected to a hostile working environment, denied medical attention under worker's compensation, and was ultimately terminated for a violation that was similar or less severe than violations committed by white employees.

6.      I filed complaints using CCA's Employee Grievance Procedure and I filed a complaint with the EEOC.

1

7.     I reported an incident of harassment against Tim Wheaton where he called me a "mother fucking bitch" in the presence of another supervisor, Ms. Gibson, during a grievance resolution meeting.

8.     I have personal knowledge regarding Wheaton being reported for similar conduct by Tamika Coley, Pamela King, Laura Golden, and inmates at the facility during the time that I worked in his unit.

9.     In 2008, I was demoted from Case Manager to Correctional Counselor because I made errors on Custody Reviews. In checking the work folders of other white Case Managers, I saw that Amanda Burch Kirkley and Nereida Huerta were making the same error more frequently; however, they were not demoted.

11.    I was unfairly terminated for violating policy 18-2 for allowing an inmate into a secure area without proper classification and "knowingly" providing false testimony to the investigator. *A true and accurate copy of PSN is attached hereto as Exhibit 1 to this affidavit.*

12.    I admitted that I let the inmate within that area and I did not provide any false statements. However, similar or greater violations were committed by **Fred Hewlett** and other white employees; however, they were not subjected to employment actions that were as severe.

13.    I highlighted all of these incidents in detail in my grievance in an attempt to be reinstated after my termination. *A true and accurate copy of this grievance is attached hereto as Exhibit 2 to this affidavit.*

14.    I believe that I was denied medical attention, demoted, and later terminated in September 2012 by CCA management in retaliation for complaining about my injuries, discrimination, a hostile work environment, and filing a complaint with the EEOC.

15.    CCA also discriminated against minorities by failing to post positions and training opportunities in accordance with their own policies.

16.    I also witnessed Darryl Wooten acting as Records Manager from 2005 until they gave him the position in 2007.

17.    Under Warden Wells' supervision and direction, I have personally witnessed that at least the following positions have been given to white employees without giving minorities an opportunity to fairly compete for them or pre-training white employees to meet the requirements for them: (a) Katie Cameron, McVey and L. Gibson were all pre-trained for the Disciplinary Hearing Officer position. (b) Tim Wheaton was given the opportunity to act as unit manager for

approximately a year and then promoted to the position of Unit Manager. (c) Yancey was given the position of Unit Manager without posting the position.

18.     In 2006, I worked with Edmi Nieves in the library. During that time, Nieves and I were told by Stephen Richards, Librarian, that CCA told him during his interview process that he didn't have to do any work. He was told that they just needed his certificate to meet the requirement of their contract.

19.     During the months before Jackson went out on stress leave, I witnessed Jackson showing signs of depression and missing days from work.

20.     Jackson confided in me during this time that she was stressed and having medical issues due to the CCA's discrimination, some pay issues, and her workload.

21.     I believe that CCA discriminates against minorities regarding discipline, terminations and promotions which created a hostile work environment.

**FURTHER AFFIANT SAYETH NOT.**

_12-05-13_
Dated

_Erika Moye_
Erika Moye

**STATE OF GEORGIA**
**COUNTY OF LAURENS**

Sworn and subscribed to before me this _5_ day of December, 2013. Such person did take an oath and produced satisfactory identification.

_____
Notary Public [SEAL]

My Commission Expires:  _7-22-16_

3

*Employee Copy*

*note: received their document action of (9-10-12)*
*3-3A*

## CCA FACILITY EMPLOYEE PROBLEM SOLVING NOTICE

**CONFIDENTIAL:** THIS FORM IS TO BE MAINTAINED IN ACCORDANCE WITH POLICY 3-9, EMPLOYEE RECORDS

Facility: _McRae Correctional Facility_

Employee: _Erika Moye_           Title: _Correctional Counselor_

Name of Supervisor initiating Problem Solving Notice: _Tamara Jordan, Chief of Unit Management_

Policy Violation: ☒ Yes   ☐ No

If yes, policy Violated *(Indicate Policy # and Title)*: _CCA Policy 18-2: Classification and Inmate-Resident Management and Policy 3-3: Code of Conduct_

Date of Situation: _June 28, 2012_   Date of Notice: _09-07-12_

**Description of Situation:**
*(To be completed electronically)*
On June 28, 2012, you escorted an inmate into a secured area and, in the process, breached the security of the facility, after which you failed to report the breach. During an investigation of the incident, you provided a statement concerning what occurred. After viewing evidence that contradicted you statement, you changed your statement to reflect the evidence that was presented. You violated Policy 18-2 by allowing an inmate into a secured area without proper classification and knowingly provided a false testimony to the investigator, which is in violation of Policy 3-3.

Corrective Action Recommended: ☒ Yes   ☐ No

If yes:
☐ Written Reprimand  ☐ Re-Assignment  ☐ Suspension  ☐ Demotion  ☐ Termination
☐ Other

_Supervisor's Signature_          _Title_          _9-10-12_ Date

---

**AT FACILITY LEVEL - SECTION BELOW TO BE COMPLETED BY WARDEN/ADMINISTRATOR**
**AT FSC LEVEL - SECTION BELOW TO BE COMPLETED BY APPLICABLE DEPARTMENT HEAD**

**Corrective Action Taken:**

☐ Written Reprimand

☐ Re-Assignment  *(Indicate New Assignment)*_____

☐ Suspension *(List Date(s) of Suspension)*_____

☐ Demotion *(Indicate New Position)*_____

☒ Termination

☐ Other_____

**EMPLOYEES MAY GRIEVE THE ABOVE BY FOLLOWING PROCEDURES ESTABLISHED IN CCA POLICY 3-6, EMPLOYEE GRIEVANCE PROCEDURES. A COPY OF POLICY 3-6 WILL BE PROVIDED UPON REQUEST.**

_W. Wells_          _9-X-12_
Warden/Administrator/          *(Print/Type)*          Warden/Administrator/          Date
FSC Department Head                    FSC Department Head Signature

_E. Moye_
Employee Name *(Print/Type)*          Employee Signature          Date

# EMPLOYEE GRIEVANCE

3-6-1B

*\*The Grievant has 7 calendar days from date of the action or discovery of the action to file a formal grievance.*
*The Grievant and Responders must send this original form to the Manager, Human Resources following each step in the process.*

### 1.   Grievant Information

| Facility | McRae Correctional Facility | Department | Programs/Units |
|---|---|---|---|
| Name | Erika Moye | | |
| Position | Correctional Counselor | | |
| Email | Erika.Moye@cca.com | | |
| Home Phone | 478-772-1276 | Cell Phone | 478-998-9102 |
| Home Address | 411 E. Mary Street Dublin, GA 31021 | | |

### 2.   Grievance Information

| Date of Offense | 06-28-2012 | Date of Action | 09-07-2012 or 09-10-2012 |
|---|---|---|---|
| Name and position of supervisor who took action | | Tamara Jordan, Chief of Unit Management Walt Wells, Warden | |

**Action Being Grieved (Attach Additional Pages if Necessary):**

I, Erika Moye, am disputing and challenging the outcome of the investigation performed by Darryl Goodner, Staff Investigator, regarding the offense on 06-28-2012. I am also challenging the unjustifiable harsh adverse action taken against me and the disparity in CCA's disciplinary actions towards minorities. Foremost, I am alleging that the motive of the facility in applying such an condemning adverse action is retaliation because of my unresolved and unattended Worker's Compensation, discrimination claims and due to my disability.

In an attempt to resolve these issues so that I may be reinstated to my job; I submit the following facts and details in support of my statements. I humbly ask that you investigate these facts and make a "good faith" effort to resolve my grievance without bias, prejudgment, or prejudice.

RE: Problem Solving Notice

#1:
PSN:  Wherein it states:
"......after which you failed to report the breach."
**Argument:**  I immediately reported the incident to James Hill, Safety Manager. The next morning around 11:00 am, I turned in my report less than 24 hours after the incident. Doesn't policy state

3-6-1B

that I had up to 24 hours? If it had not been for the fact that I went straight to the units to complete my rounds in order to make sure my work was done first, I would have had it in earlier.

#2:

PSN:  Wherein it states:
*"After viewing evidence that contradicted [your] statement, you changed your statement to reflect the evidence that was presented."*

Argument:  I never lied or "changed" my statement.  I had advised the investigator that the minor details that you are referring to were given to best of my recollection. The minor details that you refer to were not in any way an attempt to mislead the investigator or to cover up any error. I think the issue here is that I thought the inmate put down the boxes and picked them back up. This was a mistake on my part which I could see once the evidence was presented. I wish that I had left that irrelevant information out of my statement. I had no idea that a minute detail or slight error in memory could cause me my job. Again, this detail had no impact on the investigation and should not be viewed as intent to mislead.

#3:

PSN:  Wherein it states:
*"You violated policy 18-2 by allowing an inmate into a secure area without proper classification and knowingly provided a false testimony to the investigator, which is in violation of policy 3-3."*

Argument: I admitted to the error of escorting an inmate through the slider. I did not *"knowingly"* attempt to provide any *"false"* information to mislead the investigator into believing that I did not bring the inmate through the slider.

Other Arguments:
   **A. Disputable Protocol**

1 – T. Jordan, Chief of Unit Management, was given the authority to determine the recommended adverse action to be taken. Ms. Jordan is not security. Using the chain of command, it would seem that the Chief of Security or Warden of Security would have made that determination. If my immediate supervisor, Yancey was not chosen, because of the same justification of chain of command, it would seem that the Assistant Warden of Programs would have made the decision. I am alleging that T. Jordan was chosen because of my pending discrimination suit in an effort to ensure that the person who determined the adverse action was a minority.

2 – D. Goodner, Staff Investigator, did not write a 5-1c. Goodner was a witness and should not have been allowed to conduct an investigation. It was stated that I waited to turn in my 5-1c but I had 24 hours and met that deadline. Goodner didn't turn in a 5-1c at all.

   **B. Other witnesses that did not turn in a 5-1c. I suppose that was because it was also not considered a serious breach by them at the time either.**

3-6-1B

1 – Master Control Officers
2 – D. Goodner, Staff Investigator
3 – Carter, Unit Manager – carried the boxes to DHO Gibson for me but also did not write a 5-1c
4 – Coley, Counselor, did write a 5-1c and also witnessed Goodner watching the event.

  C.  Worker's Compensation claim pending – Since early 2011, up until my
termination , I requested that the Human Resource Dept. at McRae Correctional Facility
set up at an appointment with an Orthopedic Surgeon. I was told by James Hill that
the facility didn't have any Worker's Comp doctors. Fran Hartley did not answer my
calls or emails regarding this matter. Not having any Worker's Comp doctors is a violation
of contract. I was never afforded the opportunity to receive treatment from an Orthopedic
Surgeon. *(Follow up treatment)*.

  D.  EEOC charge of discrimination pending (at the time)
Please also consider the disparity in disciplinary procedures administered to minorities
and rectify this pattern by overturning this decision. Examples that reflect this disparities
are as follows:

A – Fred Hewlett, Back Dock Officer, lied in his investigation regarding firing a gun in a
hospital and was not terminated. In 2011, Fred Hewlett used inmates to wash vehicles, on the back
dock, on the weekend, without proper security. This was viewed by Ms. Turner, BOP Oversight.
Hewlett was suspended along with his supervisor, Captain Tim McNeil, for this breach of security.
Unlike myself, they were not terminated for a similar incident.

B – Tim Wheaton, Unit Manager, continuously harassed staff and was not terminated.

C – Mickey Best, Sergeant, wrecked facility and employee vehicles and was not
terminated.

D – Troy Carey, Former Chief of Security, was allowed to transfer in lieu of termination for
falsification of documentation.

E – Captain Ross sent two officers without weapon certification on a hospital run. This
is a more critical breach of security, however, he was not terminated.

Additional Pages Attached?  ☐ Yes  ☒ No   If yes, how many? _____

Remedy Requested:

1) To be reinstated immediately into my former position, in the same unit, at the same rate of
   pay, and to receive back pay for the days I have missed and continued insurance coverage
   for me and my family.
2) Any adverse decisions or statements related to this offense should be removed from my
   personnel file.

3-6-1B

3)  Opportunity to finally resolve my Worker's Compensation claim and to be allowed an appointment with the Orthopedic Surgeon to receive medical treatment for my work related injury.

_Enika L. Moye_
**Grievant's Signature**

_09-17-13_
**Date**

---

*This section to be completed by Manager, Human Resources or designee:*

Date Grievance Received: _____

NOTE:  Be sure to log receipt of this grievance form on the 3-6-1C for each step of the grievance process.

---

3.  **Step One Response**

**Respondent's Information:**

| Name | |
|------|---|
| Position | |

| Employee Name | |
|---------------|---|

Date Grievance Received: _____

Date meeting held with grievant: _____

**Respondent's Decision:**

_____
_____
_____
_____
_____

**Step One Outcome:** ☐ Resolved   ☐ Unresolved

If unresolved, state reason:

_____
_____
_____
_____