FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2014 FEB 11 A 11: 42

CLERK _____
SO. DIST. OF GA.

VERNEISA JACKSON,     *
                     *
     Plaintiff,     *
                     *     CIVIL ACTION NO.
     v.               *     CV 311-111
                     *
CORRECTIONS CORPORATION OF     *
AMERICA,     *
                     *
     Defendant.     *

## O R D E R

Before the Court is Defendant Corrections Corporation of America's ("Defendant") motion for summary judgment (doc. no. 62); Mr. Ainsworth Dudley's motion to withdraw as attorney of record for Plaintiff (doc. no. 74); and Plaintiff Verneisa Jackson's ("Plaintiff") pro se motion to amend her response in opposition to Defendant's motion for summary judgment. (Doc. no. 76). Upon consideration of the record evidence, the briefs submitted by counsel, the arguments presented at the January 21, 2014, hearing, and the relevant law, the motions are resolved as follows.

## I. Background

This case arises out of Plaintiff's employment at Defendant's McRae Correctional Facility ("McRae Facility").

Among other things, Plaintiff alleges that in November of 2009, Defendant failed to promote her to a Librarian position because of her race, in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and 42 U.S.C. § 1981 ("§ 1981"), and that Defendant failed to pay her overtime wages, in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, et seq. ("FLSA"). (Doc. no. 1.) The relevant facts, construed in Plaintiff's favor as the nonmoving party, are set forth below.

## A. Plaintiff's Failure to Promote Claim

Defendant is a private corporation that provides corrections services to federal, state, and local government agencies. (Hartley Decl. ¶ 3.) Plaintiff is a black female and worked for Defendant from August 21, 2003 until her resignation on May 28, 2010. (Jackson Aff. ¶¶ 2, 38.) She holds a bachelor's of science in business management from Brenau University and a master of science in management from Troy State University. (Def.'s Mot. Summ. J., Ex. 31.)

Plaintiff first began employment at the McRae Facility on or about August 25, 2003, as a Librarian. (Id., Ex. 11; Jackson Aff. ¶¶ 2-3.) When she applied for the Librarian position, she was aware that it required a library sciences degree and informed Defendant that she did not hold such degree. (Def.'s Mot. Summ. J., Ex. A-1; Jackson Aff. ¶ 4.)

2

Nevertheless, Defendant informed her that it would seek a waiver of this requirement and hired her for the Librarian position.[1]  (Id. ¶¶ 4-5.)

On or about November 22, 2004, Plaintiff submitted a salary increase petition seeking a pay raise and tuition reimbursement so that she could pursue a library sciences degree.  (Def.'s Mot. Summ. J., Ex. 12.)  This petition was denied on January 7, 2005, because Defendant did not have a tuition reimbursement program at the time.  (Id., Ex. 14; Jackson Dep. at 149.)  Plaintiff continued working as a Librarian until April 12, 2005 when she applied for and accepted a Case Manager position.[2]  (Jackson Aff. ¶ 6.) Plaintiff held this position for nearly three years.  (Jackson Aff. ¶ 6.)

Plaintiff, seeking to transfer back to the Education Department, applied and was selected for the Library Aide position in March 2008.  (Jackson Dep. at 14, 157-59.)  When she accepted this position, Plaintiff was aware of its job

---

[1] In addition, Plaintiff submits the affidavit of Mr. James Hill, a Safety Manager for Defendant at the McRae Facility, in which he describes a 2007 meeting with Mr. Michael Pugh ("Pugh"), who was at the time the Warden at the McRae Facility.  (Hill Aff. ¶ 7.)  Pugh asked, "Why can't we give Hill a waiver for the Chaplain position and Wooten a waiver for the Records positions just as we did for the Librarian position[?]"  (Id.)

[2] Plaintiff testified that she had applied to other positions prior to the Case Manager position and that she accepted the Case Manager position because she "didn't want to miss an opportunity."  (Jackson Dep. at 146-47.)

description, duties, and pay. (Id. at 158-60; Def.'s Mot. Summ. J., Ex. 23.) Further, Plaintiff's interest in the Library Aide position was not conditioned upon Defendant subsequently waiving the library sciences degree requirement for the Librarian position. (Jackson Dep. at 158.)

In January 2009, Plaintiff learned that the Librarian position was vacant.[3] (Jackson Aff. ¶ 12.) On or about February 19, 2009, Plaintiff submitted a cover letter and her resume to the Human Resources Department expressing her interest in and discussing her credentials for the Librarian position. (Def.'s Mot. Summ. J., Ex. 31.) Plaintiff was aware that this submission did not constitute a formal application because the Librarian position had not been posted. (Jackson Dep. at 95-96, 173-75.) Neither Plaintiff nor any other individual interviewed for this position. (Id. at 175.) No one else was considered for the position. (Id.) Nevertheless, Plaintiff believed that her cover letter and resume constituted an informal application for a vacant position (id. at 95-96, 173-75) and that the educational requirement could be waived. (Jackson Aff. ¶ 12.) Indeed, over the next six months, the Assistant Warden, Human

---

[3] Mr. Walt Wells, who at the time was the Warden at the McRae Facility, issued a memorandum on January 13, 2009, acknowledging the facility's need for a full-time, qualified Librarian. (Def.'s Mot. Summ. J., Ex. 31.) An attached "Plan(s) of Action Form" directed the Human Resources Manager to "[i]ncrease current recruitment efforts for the vacant Librarian position." (Id.)

4

Resources Manager, and Plaintiff's supervisor informed her that the degree requirement could be waived and that they were processing her application. (Id. ¶ 13.)

In November 2009, Mr. Victor Orsolits, an Assistant Warden at the McRae Facility, informed Plaintiff that she would not be selected for the Librarian position because of budgetary concerns. (Id. ¶ 15; Jackson Dep. at 51-52.)

On November 25, 2009, Plaintiff filed her first formal grievance with Defendant. (Def.'s Mot. Summ. J., Ex. 28.) In her grievance, Plaintiff alleged that she has "dealt silently" with the "isms" extant at the McRae Facility: "cronyism, racialism, nepotism, favoritism, and sexism." In addition, Plaintiff described Mr. Osolits as "lack[ing] . . . interpersonal communication skills and/or . . . tactful leadership skills." (Id.) Plaintiff alleged that Mr. Orsolits placed extra duties on her and reassigned a sergeant to a new post at the McRae Facility under the pretense that she was distracting Plaintiff from her work. She also alleged that in one instance, "[Mr.] Orsolits became reactive to a problem that he should have responded to proactively . . . ." (Id.) Plaintiff recounted another alleged encounter with Mr. Orsolits:

> [Mr. Orsolits] then tried to give me tips on time management skills and suggested that I prioritize tasks. I was insulted and interrupted him by I

(sic) quoting several well-known authors and titles of books that I had read on this subject, told him again that I have a Master's in a (sic) Management from an accredited college, and didn't need his tips.[4]

(Def.'s Mot. Summ. J., Ex. 28.)  In addition, Plaintiff requested that she be compensated with backpay for the seventeen months that she allegedly had served as the de facto Librarian.[5]  (Id.)

On or about February 5, 2010, Plaintiff filed a second grievance, complaining of two memoranda she had received. (Id., Ex. 38.)  The first memorandum directed Plaintiff not to notarize inmate-prepared documents that target or threaten an employee.  (Id.)  The memorandum further directed Plaintiff to "refer all non-traditional notary requests" from inmates to her supervisor.  (Id.)  The second memorandum instructed Plaintiff to return to regular work hours at the McRae

---

[4] In her deposition, Plaintiff acknowledged that she disagreed with Mr. Orsolits's management style, which she described as "autocratic, tyrannical, and oppressive," and expressed her belief that she would have been a more professional manager than him. (Jackson Dep. at 199, 204-05.)

[5]   Defendant conducted an investigation of Plaintiff's first grievance.  On March 29, 2010, Ms. Kenya Golden, an investigator from Defendant's Gadsden Facility, submitted the findings of her investigation. (Def.'s Mot. Summ. J., Ex. 41.)  She concluded that there was no evidence to support Plaintiff's allegations.  (Id.)  Moreover, Ms. Golden speculated that "Plaintiff's conclusions regarding retaliatory action and discrimination . . . [were possibly prompted by her resistance to [Mr. Orsolits's] authority and/or her lack of knowledge regarding policy and protocol applicable to the job selection process."  (Id.)  Plaintiff states in her deposition that these findings are racially discriminatory but fails to indicate any personal knowledge as to this conclusion.  (Jackson Dep. at 183-84.)

Facility and to cease working from home.[6]  (Id., Ex. 37.)
Plaintiff alleged that these memoranda were meritless and
racially and sexually discriminatory.[7]  (Id.)  Plaintiff was
not suspended and did not otherwise receive lesser wages or
negative evaluations because of these memoranda.  (Jackson
Dep. at 214-15.)

Plaintiff took FMLA medical leave sometime in late
February 2010.  (Jackson Dep. at 238-39.)  This was the last
time that Plaintiff actually worked for Defendant.  (Id. at
239.)

On March 19, 2010, Plaintiff filed a third grievance
complaining that she was forced to be questioned by Ms. Golden
while she was on FMLA leave.  (Id., Ex. 47.)  This grievance
was successfully resolved, and Plaintiff acknowledged that it
does not relate to her failure to promote or FLSA claims.
(Jackson Dep. at 239.)

On May 28, 2010, Jackson submitted her letter of
resignation, in which she alleged that she was constructively
discharged.  (Def.'s Mot. Summ. J., Ex. 59.)

---

[6] As explained infra, Plaintiff was working from home from September
2009 until February 5, 2010 because of a gastrointestinal condition.

[7] Both memoranda are from Betty McClendon, Plaintiff's supervisor at
the McRae Facility, but Plaintiff alleged that Mr. Orsolits somehow
directed Ms. McClendon to issue them to Plaintiff.  (Id.)

## B. Plaintiff's Overtime Wages Claim

While her informal application was under review—from February to November 2009—Plaintiff was instructed to fulfill the requirements for both the Librarian and Library Aide positions.[8] (Jackson Decl. ¶ 14.) In addition, a performance summary for November 1, 2008, through October 31, 2009, indicates that Plaintiff is "accountable as librarian and library aide simultaneously" and "has supervised library services for the last seventeen months as librarian even though uncompensated." (Def.'s Mot. Summ. J., Ex. 31.)

Prior to September 2009, the hours that Plaintiff worked "would be on the clock" and were logged because Plaintiff was working at the McRae Facility. (Jackson Dep. at 59.) Accordingly, Plaintiff was paid for overtime she worked while at the McRae Facility.[9] (Id.) Each time she was paid overtime for work conducted at the McRae Facility, she was reprimanded to closely monitor her hours and was encouraged to keep a log to ensure she only worked forty hours per week. (Id.)

---

[8] Presumably, Plaintiff's Human Resource Manager, supervisor, or Assistant Warden directed Plaintiff to complete these obligations. (See Jackson Aff. ¶ 13.) However, Plaintiff's affidavit does not specifically identify who directed Plaintiff.

[9] Indeed, when asked about the subject matter of her FLSA overtime claim, Plaintiff agreed that she was only complaining about overtime she allegedly worked at home. (Id. at 59-60.)

In September 2009, Plaintiff developed a gastrointestinal condition, which caused her to miss work. (Id. at 49.) As an accommodation for her condition, Plaintiff was allowed to work from home to reach her requisite 40 hours per week, provided that she maintained a log of the tasks she completed and hours worked from home. (Id. at 49-50.) Plaintiff also received a form timesheet that she would use to log her hours. (Id. at 50.) During the time she was working from home, however, Plaintiff turned in only one log sheet indicating that she worked overtime. (Id. at 57.) When working from home, Plaintiff checked her e-mail, worked on computer files using a network portal, and labeled and filed materials. (Id. at 61.) On February 4, 2010, Plaintiff received a memorandum instructing her to return to regular work hours at the McRae Facility and to cease working from home. (Def.'s Mot. Summ. J., Ex. 37.)

Plaintiff asserts that she complained about not being paid overtime to the Human Resource Manager on six occasions between April 2008 and February 1, 2010, to Mr. Orsolits on two occasions in fall 2009, and the Warden on three occasions in 2008 and 2009. (Jackson Aff. ¶ 10.) In her first grievance, Plaintiff requested that she receive backpay for the 17 months that she allegedly had served as the de facto Librarian. (Def.'s Mot. Summ. J., Ex. 28.) In addition,

Plaintiff alleged in her second grievance that she notified Mr. Orsolits that she was working uncompensated overtime from May 2008 through February 2009. (Def.'s Mot. Summ. J., Ex. 38.)

Defendant maintains a Compensation Policy that addresses overtime compensation:

> [Defendant's] Exempt/Non-Exempt Compensation Policy requires payment for all hours worked by non-exempt employees regardless of whether the hours are pre-approved. This policy also places on (sic) obligation on the employee to record all time worked each day and to promptly verify that their check accurately reflects all of the hours that were worked in that pay period. Additionally, the policy requires employees to notify the Human Resources Department if the employee has worked overtime hours for which the employee has not been paid.

(Hartley Decl. ¶ 12.)

Plaintiff states in her affidavit and deposition testimony that she worked between 7.5 and 10 hours a week of unpaid overtime from April to November 2008, and between 5 and 10 hours a week of unpaid overtime from November 2008 until she took FMLA leave in February 2010. (Jackson Dep. at 48-49, 60, 238-39.) However, she never kept records of the hours that she worked.[10] (Jackson Dep. at 48-49.) She offers no

---

[10] Conflictingly, Plaintiff's affidavit states that "[f]or the first six or seven months that [she] worked as library aid-[April to November 2008]-[she] worked 7.5 - 10 hours per week for which [she] wasn't paid. In September 2009, [she] began working 5 - 10 hours overtime per week for which [she] wasn't paid." (Jackson Aff. ¶ 8.) Moreover, Plaintiff asserts in her brief that she "worked between 7.5 to 10 hours a week overtime from April to September, 2009 for which she was not paid overtime wages. From September 2009 until [February 2010] [she] continued to work 5 - 10 hours

additional evidence that she worked these amounts during these time periods.

## C. Procedural Background

On January 27, 2010, Plaintiff filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Doc. no. 1, Ex. A.) On or about September 30, 2011, Plaintiff received a notice of right to sue letter from the EEOC. (Id., Ex. B.) She subsequently filed suit on December 23, 2011.[11] On June 21, 2012, Plaintiff amended her complaint, raising claims against Defendant for: race discrimination and retaliation under 42 U.S.C. § 1981; race and sex discrimination under Title VII; retaliation under Title VII; racially hostile work environment under Title VII; failure to pay overtime and retaliation under the FLSA; and intentional infliction of emotional distress. (Doc. no. 18.) Plaintiff also alleged that she was entitled to bad faith attorney's fees under O.C.G.A. § 13-6-11 and punitive damages. (Id.)

On November 21, 2013, Defendant moved for summary judgment on all of Plaintiff's claims. (Doc. no. 62.) The Clerk gave Plaintiff appropriate notice of the motion for

---

overtime per week for which she was not paid." (Pl.'s Br. Resp. to Def.'s Mot. Summ. J., at 3-4.)

[11] For the purposes of Plaintiff's discrimination claims, her charge of discrimination and subsequent suit appear timely. See 42 U.S.C. §§ 2000e-5(e), (f).

summary judgment and informed her of the summary judgment rule, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. no. 63.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied. The time for filing materials has expired, and the parties fully presented their positions at the oral argument held on Tuesday, January 21, 2014.[12] The motion is ripe for consideration.

## II. Summary Judgment Standard

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." United States v. Four

---

[12] Plaintiff's counsel subsequently moved to withdraw as attorney of record on January 23, 2014. (Doc. no. 74.) This motion comes after the motion for summary judgment has been fully briefed and argued with the benefit of counsel for Plaintiff. Thus, the motion is ripe for consideration and no party is prejudiced by ruling on the motion at this time.

Parcels of Real Prop. in Greene & Tuscaloosa Cntys., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

### III. Discussion

As an initial matter, Defendant moves for summary judgment on all of Plaintiff's claims. Plaintiff, however, only contests Defendant's arguments for her FLSA overtime claim and for her race discrimination claims under Title VII and 42 U.S.C. § 1981 based on Defendant's alleged failure to promote her to the Librarian position. Accordingly, Plaintiff has abandoned the other claims that she raised in her amended complaint but failed to argue in response to Defendant's motion. See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) (en banc) ("There is no burden upon the district court to distill every potential argument that could be made . . . . Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (citation omitted); Curry v. Sec'y, Dep't of Veterans Affairs, 518 F. App'x 957, 962 (11th Cir. 2013) ("[The defendant's] motion clearly moved for summary judgment on all claims. In response, [the plaintiff] addressed only three . . . claims . . . . As a consequence, she abandoned her other claims . . . .").

In addition, Defendant seeks to exclude numerous portions of Plaintiff's submitted affidavits in response to Defendant's motion for summary judgment because the challenged portions

therein are not based on personal knowledge, speculative, founded on hearsay, and/or are self-serving shams designed to avoid harmful testimony in Plaintiff's deposition. Defendant also contends that Plaintiff's response to Defendant's statement of material facts fails to comply with Local Rule 56.1 and that consequently Defendant's statement of material facts is deemed admitted.

Nevertheless, this Court must still consider the merits of Defendant's motion for summary judgment. See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but rather, must consider the merits of the motion."). Moreover, the Court will limit its consideration to only the evidence that is properly before it.

## A. Plaintiff's Failure to Promote Claims

In its motion for summary judgment, Defendant contends that Plaintiff fails to demonstrate that a genuine issue of fact exists that it did not promote Plaintiff to the Librarian position because of her race. Title VII prohibits employers from "fail[ing] or [refusing] to hire . . . or otherwise [discriminating] against any individual with respect to compensation, terms, conditions, or privileges of employment,

16

because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Similarly, § 1981 preserves the right of all persons in the United States to make and enforce contracts. "Both of these statutes have the same requirements of proof and use the same analytical framework[.] [T]herefore[,] [the Court] shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim . . . ." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). "Where direct evidence of discrimination is unavailable—as [is] the case here—a plaintiff, nevertheless, may present circumstantial evidence of discrimination to create a jury question" and survive a motion for summary judgment. Price v. M&H Valve Co., 177 F. App'x 1, 11 (11th Cir. 2006).

In evaluating a claim based on circumstantial evidence, courts often use the now-familiar burden-shifting framework established by the United States Supreme Court in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir. 1997). In the context of a failure to promote case, a plaintiff may establish her prima facie case of discrimination by showing

17

that: "(i) he or she belonged to a protected class; (ii) he or she was qualified for and applied for a position that the employer was seeking to fill; (iii) despite qualifications, he or she was rejected; and (iv) the position was filled with an individual outside the protected class." Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768 (11th Cir. 2005). However, "where an employer does not formally announce a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show . . . that [she] applied for the position—only that the employer had some reason to consider [her] for the post." Id. In addition, a plaintiff may satisfy her burden in showing that after her rejection, "the position remained open and the employer continued to seek applicants from persons of [her] qualifications." McDonnell-Douglas, 411 U.S. at 802.

Once established, a prima facie case of discrimination "creates a presumption of discrimination, [and] the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004). The employer "'need not persuade the court that it was actually motivated by the proffered reasons.'" Id. (quoting Burdine, 450 U.S. at 254-55). "If the employer satisfies its burden by articulating one or more reasons, then the presumption of

discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." Id. (citing Burdine, 450 U.S. at 255-56). "To demonstrate pretext, the plaintiff must demonstrate both that the proffered reason is false and that discrimination . . . was the real reason for the adverse employment action." Jefferson v. Burger King Corp., 505 F. App'x 830, 834 (11th Cir. 2013) (citing Brooks v. Cnty. Comm'r of Jefferson Cnty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006)).

### 1) Plaintiff's Prima Facie Case

Assuming, arguendo, that Plaintiff satisfies the first three elements of her prima facie case of discrimination, she fails to demonstrate that the Librarian position "was filled with an individual outside the protected class," Vessels, 408 F.3d at 768, or even that the Librarian position "remained open and the employer continued to seek applicants from persons of [her] qualifications." McDonnell-Douglas, 411 U.S. at 802. It is undisputed that the Librarian position was not an open, posted position in February of 2009. Moreover, Plaintiff considered that the submission of her cover letter and resume at best constituted an informal application for the Librarian position. There is no indication that Defendant ever filled the Librarian position, that Defendant interviewed

19

any individual for the position, or even that the position has subsequently become an open, posted position. Without any evidence that Defendant actively sought to fill the Librarian position at any point relative to Plaintiff's informal application, Plaintiff's prima facie case fails to present any comparator to support an inference that Plaintiff was not promoted to the Librarian position because of her race.[13] Moreover, Plaintiff's failure to dispute Defendant's contentions in this regard demonstrates the infirmity of her prima facie case of discrimination.

### 2) Pretext

Rather than attempt to present a prima facie case of discrimination, Plaintiff argues that Defendant's proffered legitimate, non-discriminatory reasons are pretextual. Nevertheless, this strategy cannot rescue Plaintiff's discrimination claims. Although it is not necessary for a plaintiff to use the McDonnell-Douglas framework to demonstrate how circumstantial evidence points to Defendant's discriminatory intent,

> a showing of pretext, without more, will not necessarily support a finding of racial discrimination. "Only when defendants' articulated

---

[13] As Defendant properly argues, Plaintiff's evidence regarding her previous applications for various positions at the McRae Facility and the alleged instances of discrimination of her co-workers must be excluded. Plaintiff has demonstrated no personal knowledge as to these other applicants' qualifications. Moreover, Plaintiff's references to alleged discriminatory treatment are founded upon inadmissible hearsay and again fail to show how Plaintiff has any personal knowledge of these events.

reason is pretext 'for accomplishing a racially discriminatory purpose' will the plaintiff recover . . . . The court thus may not circumvent the intent requirement of the plaintiff's ultimate burden of persuasion by couching its conclusion in terms of pretext; a simple finding that the defendant did not truly rely on its proffered reason, without a further finding that the defendant relied instead on race, will not suffice to establish Title VII liability."

Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1184-85 (11th Cir. 1984) (quoting Clark v. Huntsville City Bd. of Educ., 717 F.2d 525, 529 (11th Cir. 1983)). Here, Defendant has proffered two legitimate, non-discriminatory reasons: (1) that Plaintiff was not qualified for the Librarian position; and (2) that the Librarian position was not open when Plaintiff submitted her cover letter and resume. However, even assuming that Plaintiff has demonstrated that these reasons are pretextual, Plaintiff offers no evidence that race discrimination was the impetus for Defendant's failure to promote Plaintiff.[14] Stating in conclusory fashion that a legitimate, non-discriminatory reason is pretext for discrimination does not simply make it so. As stated supra, note 12, Plaintiff's evidence of her application history fail to demonstrate any personal knowledge as to the qualifications of the candidates selected for the positions. Second, any

---

[14] In addition, there is evidence that the actual reason given for rejecting Plaintiff's application was because of budgetary concerns. Plaintiff does not attempt to demonstrate that this reason was pretext for discrimination.

21

anecdotal evidence of other alleged instances of discrimination at the McRae Facility is founded on inadmissible hearsay and/or a lack of personal knowledge. Third, any evidence regarding Plaintiff's occasionally contentious relationship with Mr. Orsolits fails to give rise to an inference of discriminatory animus. That Plaintiff disagreed with and at times challenged Mr. Orsolits's management style does not demonstrate that Mr. Orsolits held discriminatory animus against her. See Nix, 738 F.2d at 1187 ("Title VII addresses discrimination. [It] is not a shield against harsh treatment at the workplace.") (emphasis in original and citations omitted).

Based upon the foregoing, Plaintiff has failed to establish a prima facie case of discrimination or create a genuine issue of fact that Defendant's reasons for not promoting her were pretext for discrimination. Accordingly, Defendant's motion for summary judgment on Plaintiff's Title VII and § 1981 race discrimination claims based on Defendant's failure to promote her to the Librarian position is **GRANTED**.

## B. Plaintiff's Overtime Wages Claim

### 1) Overtime Allegedly Worked from March 2008 until December 23, 2008

Although the statute of limitations under the FLSA generally is two years, a "cause of action arising out of a

willful violation of the FLSA may be commenced within three years after the action accrued." <u>Allen v. Bd. of Pub. Educ. for Bibb Cnty.</u>, 495 F.3d 1306, 1323 (11th Cir. 2007) (citing 29 U.S.C. § 255(a)). An employer acted willfully when it "disregarded the very possibility that it was violating the statute." <u>Id.</u> Moreover, courts reserve a determination of the applicable statute of limitations "until it is determined whether a violation of the FLSA" occurred. <u>Id.</u> at 1324.

Even assuming that the applicable statute of limitations is three years, Defendant is entitled to summary judgment for any unpaid overtime alleged to have occurred prior to December 23, 2008, three years before Plaintiff filed her complaint.

### 2) Overtime Allegedly Worked from December 23, 2008 until February 2010

Under the FLSA, "an employer may not employ his employee for a workweek longer than forty hours unless his employee receives overtime compensation at a rate not less than one and a half times his regular rate." <u>Allen</u>, 495 F.3d at 1314 (citing 29 U.S.C. § 207(a)). Under the FLSA, "[a] person is employed if he or she is suffered or permitted to work." <u>Id.</u>; <u>see also</u> 29 C.F.R. § 785.11 (stating that the phrase "suffered or permitted to work" means where an employer "knows or has reason to believe that [the employee] is continuing to work and the time is working time"). When a plaintiff brings a

claim for an alleged failure to pay overtime, she "must demonstrate that (1) . . . she worked overtime without compensation and (2) [the defendant] knew or should have known of the overtime work." Id. at 1314-15. Because Plaintiff fails to create a genuine issue of fact that she worked overtime without compensation, the Court need not analyze the second prong of this standard.

The Eleventh Circuit has observed that "[a]lthough a FLSA plaintiff bears the burden of proving that she worked overtime without compensation, '[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee.'" Id. at 1315 (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)). Moreover, "it is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment. The employer is in a superior position to know and produce the most probative facts concerning the nature and amount of work performed and 'employees seldom keep such records themselves.'" Id.

Therefore, "in cases where the employer has kept proper and accurate records of its employees' hours, the plaintiff-employee may discharge his or her burden of proof simply by producing those records." Stuart v. Resurgens Risk Mgmt.,

Inc., 2012 WL 2903571, at *8 (N.D. Ga. June 12, 2013) (citing Anderson, 328 U.S. at 687)). However, "in situations where the employer's records cannot be trusted and the employee lacks documentation, 'an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'"[15] Allen, 495 F.3d at 1316 (quoting Anderson, 328 U.S. at 687). Here, Plaintiff has failed to produce any documentation of the overtime hours she allegedly worked. At issue is whether Plaintiff has created a genuine issue of fact that the employer's records cannot be trusted, and if so, whether Plaintiff has created a genuine issue as to the amount and extent of her overtime work as a matter of just and reasonable inference.

a. Whether Defendant's Records Can Be Trusted

The Eleventh Circuit in Allen reversed the district court's conclusion that the plaintiffs failed to meet their burden to show that they actually worked overtime, concluding

---

[15] It has been noted:

> The solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the [FLSA].

Anderson, 328 U.S. at 687.

that the employer's records were not worthy of credence. Allen, 495 F.3d at 1316. The court found evidence that the employees were instructed not to "record their overtime hours because the Board would not pay them overtime." Id. at 1316. In addition, the evidence demonstrated that when some of the employees logged their overtime hours, their employer rejected their accurate time sheets and required them to resubmit altered time sheets reflecting reduced hours. Some "time sheets were torn up if they reflected overtime work," and "the individual in charge of time sheets would white out time worked on his time sheets." Id. The Eleventh Circuit found that "these facts indicate[d] that the [employer's] records [could] not be trusted" and that the employees would carry their burden at summary judgment if they "produce[d] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id.

The instant case is sharply distinguishable from Allen. First, Plaintiff agrees that she was paid for overtime that she worked at the McRae Facility. In addition, although she was instructed to closely monitor her hours, there is no evidence that Defendant altered, manipulated, or destroyed Plaintiff's time records. Moreover, Defendant maintained a compensation policy that required payment for all hours worked by an employee, regardless of whether time worked was

26

overtime. This policy also required employees to record the time that they worked each day, verify the amount reflected on their check, and alert the Human Resources Department if they found any discrepancies. In compliance with this policy, Plaintiff in the past had turned in time sheets showing that she has worked overtime and has been paid for the amount of overtime worked.

Based upon the foregoing, Plaintiff fails to meet her burden to create a genuine issue of fact that Defendant's records cannot be trusted. See Brown v. ScriptPro, LLC, 700 F.3d 1222, 1225, 1230-31 (10th Cir. 2012) (where the employee failed to record the overtime he worked from home in the employer's timekeeping system and to turn in time sheets indicating the hours worked, the court concluded that the employer kept accurate records, that the employee was required to turn in his hours but failed to comply with the employer's policies, and that there was no FLSA violation because the employee failed to notify the employer of his overtime hours through the established overtime record-keeping system). Even considering Plaintiff's evidence showing that she was trying to fulfill the duties for the Librarian and Librarian Aide positions, Plaintiff's bald assertions that she worked between five and ten hours of overtime since April of 2008, in light of her near complete failure to log the time she worked

overtime, are insufficient to create a genuine issue of fact. See Patrick v. Bishop State Cmty. College, 470 F. App'x 797, 799 (11th Cir. 2012) ("A mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.") (quoting Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1162 (11th Cir. 2006)).

      b. The Amount and Extent of Plaintiff's Alleged Overtime Work

Even assuming, arguendo, that there is a genuine issue as to whether Defendant's records can be trusted, Plaintiff's evidence nevertheless fails to create a genuine issue as to the amount and extent of her overtime work as a matter of just and reasonable inference. The Eleventh Circuit in Allen observed that "[i]t [was] not insignificant that [the employees'] inability to state the hours they worked may be at least partly the fault of the [employer]" due to the employer's alterations to and destruction of various time sheets. Allen, 495 F.3d at 1317. The court concluded that it could be "inferred that [the employees] would have reported their overtime" had the employer's misconduct not occurred. Id. Further, the court found indicia of reliability from "triggering factors" that aided employees in recalling the times that they worked overtime. Id. The court concluded

that, even though the employees lacked documentation and "failed to state with precision the number of uncompensated hours they worked and the days on which that work was performed," they produced "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. at 1317-18; see also Thrower v. Peach Cnty., Ga., Bd. of Educ., 2010 WL 4536997, at *6 (M.D. Ga. Nov. 2, 2010) ("[The plaintiffs] have come forward with sufficient evidence of their overtime hours to withstand summary judgment. The record contains weekly time sheets from [the plaintiffs] documenting more than forty hours worked. Both [plaintiffs] testified the work they performed during overtime hours was work regularly performed . . . " and provided specific examples of the type of work they performed).

Conversely, no similar inference may be drawn here. Assuming Plaintiff did work overtime, there is no evidence that employer's conduct in the instant case drove Plaintiff to misreport or underreport her time. Moreover, rather than providing specific overtime hours worked on a weekly basis, Plaintiff's affidavit and deposition testimony only provide conflicting, nebulous approximations of the hours that she worked. Further, Plaintiff presents no evidence as to any "triggering factors" with which to bolster her bare assertions

that she worked overtime, e.g., which projects she worked on, the nature of those projects, or the relevant time periods that she worked on those projects. In addition, Plaintiff's supervisors encouraged her to track and log her time accurately and even provided her with a form on which she could log her time. That Plaintiff failed to take advantage of this opportunity to conclusively establish any amount of overtime she claims that she worked is particularly detrimental to her claim.

Based upon the foregoing, Plaintiff has failed to demonstrate that a genuine issue of fact exists either that Defendant's records cannot be trusted or that she has shown the amount and extent of her overtime work as a matter of just and reasonable inference. Accordingly, Defendant's motion for summary judgment is **GRANTED**.


## IV.   Conclusion

Upon due consideration, Mr. Dudley's motion to withdraw as attorney of record for Plaintiff (doc. no. 74) is **GRANTED**, and Plaintiff's pro se motion to amend her response in opposition to Defendant's motion for summary judgment (doc. no. 76) is **DENIED**.

Defendant's Motion for Summary Judgment (doc. no. 62) is **GRANTED**. The Clerk is directed to **TERMINATE** all remaining deadlines and motions, **ENTER JUDGMENT** in favor of Defendants, and **CLOSE** the case. The Clerk shall tax costs against the Plaintiff consistent with Federal Rule of Civil Procedure 54(d).

**ORDER ENTERED** at Augusta, Georgia, this 11th day of February, 2014.

UNITED STATES DISTRICT JUDGE

31